_____

No. 95-2392

_____

Russell Bryan Hadley,                    *
                                         *
        Petitioner/Appellee,             *
                                         *
     v.                                  *
                                         *
Michael Groose; Paul Caspari;            *
James Purkett, Superintendent            *
of the Farmington Correctional           *
Center; Jeremiah (Jay) W.                *
Nixon, Attorney General,                 *
                                         *
        Respondents/Appellants. *

        _____                      Appeals from the United States
                                         District Court for the
        No. 95-2515                      Western District of Missouri.
        _____

Russell Bryan Hadley,                    *
                                         *
        Petitioner/Appellant,            *
                                         *
     v.                                  *
                                         *
Michael Groose; Paul Caspari;            *
James Purkett, Superintendent            *
of the Farmington Correctional           *
Center; Jeremiah (Jay) W.                *
Nixon, Attorney General,                 *
                                         *
        Respondents/Appellees.           *

                        _____

        Submitted:  February 13, 1996

            Filed:  October 11, 1996
                        _____

Before BOWMAN, HEANEY, and WOLLMAN, Circuit Judges.
                        _____

WOLLMAN, Circuit Judge.

The State of Missouri appeals the district court's[1] order granting Russell Hadley's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  We affirm.

**I.**

In the early morning hours of December 11, 1985, Hazel Smith, an elderly resident of a trailer park in Webb City, Missouri, awoke to find a man with a knife standing beside her bed.  The man blindfolded Mrs. Smith with her pajamas and then sodomized her.  He also robbed her of a small amount of personal property and cash.

On the morning of December 15, 1985, Mrs. Smith awoke to hear someone attempting to force the front door to her trailer open.  A newly-installed safety chain prevented the intruder's entry.  Mrs. Smith told police that she "knew it was the same individual" from the December 11 attack.  She testified at trial, however, that she only saw the intruder's head and not his face, and did not offer any testimony connecting the December 15 intruder to the December 11 attack.

Hadley was arrested and charged with the December 11 attack.  He was represented by public defenders Larry Maples and Craig Johnston.  After a one-day trial on May 2, 1986, the jury returned that same night with a verdict finding Hadley guilty of sodomy, first-degree robbery, and armed criminal action.  As a prior offender, Hadley was sentenced to consecutive thirty-year terms on each count.  Hadley's convictions were affirmed on direct appeal.  State v. Hadley, 736 S.W.2d 580 (Mo. Ct. App. 1987).  His motion for post-conviction relief was denied, and this denial was affirmed

---

[1]The Honorable Howard F. Sachs, United States District Judge for the Western District of Missouri.

-2-

on appeal.  <u>Hadley v. State</u>, 771 S.W.2d 943 (Mo. Ct. App. 1989).

## II.

Hadley filed a petition for a writ of habeas corpus.  After a limited evidentiary hearing, the district court denied Hadley's petition and request for a full evidentiary hearing on the ground that his claims were procedurally barred.  <u>Hadley v. Groose</u>, No. 91-0951-CV-W-6, 1994 WL 14855 (W.D. Mo. Jan. 19, 1994) (revised memorandum and order).  We concluded that Hadley's claims were not barred and reversed and remanded for an evidentiary hearing and further consideration of Hadley's claims.  <u>Hadley v. Caspari</u>, 36 F.3d 51, 52 (8th Cir. 1994) (per curiam).

On remand, after conducting a two-day hearing, the district court granted Hadley's petition, concluding that Maples and Johnston had been ineffective in dealing with the introduction of evidence regarding the December 15 attempted break-in.  <u>Hadley v. Groose</u>, No. 91-0951-CV-W-6, 1995 WL 307424 (W.D. Mo. May 17, 1995) (memorandum and order).

The State appeals, arguing that the district court erred in conducting a second evidentiary hearing and that the district court erroneously concluded that Maples and Johnston had been ineffective. Hadley cross-appeals, arguing that he was entitled to relief on grounds alleged in his petition that the district court did not address.

## III.

With respect to the State's first contention, the district court can hardly be faulted for complying with our directive that it hold an evidentiary hearing.

Turning to the merits of the district court's ruling, the key to understanding this case is to appreciate the damning nature of the evidence of the December 15 attempted break-in, for we agree with the district court "that what the jury believed about Dec 15. was the `make-or-break' aspect of the case." Memorandum and Order at 14. Hadley was never charged in relation to the December 15 incident, yet the trial court allowed the introduction of testimony regarding the subsequent attempted break-in to show identification, common scheme or plan, and motive.

The State's case regarding the December 11 attack was weak. Smith's eyewitness identification of Hadley was described by the district court as "not very powerful" and "rather weak."[2] The only other evidence linking Hadley to the attack was a single pubic hair found at the scene, which had characteristics consistent with Hadley's pubic hair, and a semen sample left by a person with Type A blood--Hadley's blood type and the blood type of approximately 42% of the population. Furthermore, Hadley presented evidence establishing an alibi for the time of the attack.

The evidence regarding the attempted break-in on December 15 developed as follows. Mrs. Smith called the police on December 15 soon after the foiled intruder left. Officers Rogers and Breeden arrived at Mrs. Smith's trailer at 5:43 a.m. on December 15. Deputy Sheriff Parrill arrived shortly thereafter. A light snow had fallen that morning. Rogers's report contained the following statement:

---

[2]Mrs. Smith, who said she only caught a side view of her attacker, described him as being 5'6" tall, 160 pounds, with very little hair on his chest except for a strip of hair in the middle. Hadley was 6' tall, 185 pounds, and, as demonstrated at the first evidentiary hearing, has chest hair from armpit to armpit, with some bunched in the middle. Furthermore, Mrs. Smith was unable to pick Hadley out at a photo line-up on December 11, despite the line-up containing a mug shot with a side view of Hadley. She testified that she said, while pointing to Hadley's picture, "`if it would be any of them, it would be this one.'"

> This R/O [reporting officer] also observed that there were snow tracks in the shape of footprints on the victim's front porch. The tracks appeared to be that of boots with cleat type soles. The victim stated no one had been on her porch recently. This R/O and Officer Breeden made a canvass of the victim's yard and found several footprints in the snow leading to and from the victim's trailer to the street in front of the house, however, it was not possible to trace the prints further than the street area.
>
> This R/O and Officer Breeden checked the area around trailer #6 and Officer Breeden found footprints in the snow around trailer #6.

Trailer #6 was the trailer of Mary Ellen Reding, Hadley's mother. Although Hadley was living there on December 10-11, he had moved out of the trailer prior to December 15.

At a deposition in the present case, Rogers testified that he traced the footprints out to the edge of the street, where they disappeared; he did not trace them farther. Rogers also testified that it was Breeden who discovered the footprints outside Reding's trailer. Rogers observed three or four different types of footprints, none of which were the same as those outside Mrs. Smith's trailer. Rogers stated that the footprints at Mrs. Smith's trailer appeared to be from a hiking-type boot, not a cowboy boot.

Deputy Sheriff Parrill's report stated that the footprints in the snow "led S.E. to Road then vanished." Parrill testified at Hadley's post-conviction relief hearing that the snow was soft in Mrs. Smith's yard but compacted in the road, that there were no visible prints in the road, and that he did not attempt to trail the prints farther.

The prosecutor added the following note to Rogers's report: "These officers followed tracks to road -- lost them in road & they appeared on opposite side, leading to Hadley's trailer." The fact that it was the prosecutor who added this note was not disclosed

until after trial.

Prior to trial, the defense filed a motion in limine to exclude evidence of the December 15 attempted break-in. The prosecutor argued for admission of the evidence, stating that the footprints found on December 15 leading to Reding's trailer were "similar in size, shape, to what had been in front of" Mrs. Smith's trailer and that the footprints in front of Mrs. Smith's trailer "could be identified in going up to Hadley's trailer." Agreeing with the prosecutor, the trial court stated that "you have the footprints leading out to the road and to the defendant's trailer," and that "we have the footprints pointing to his trailer."

The prosecutor then moved to substitute Officer Breeden for Officer Rogers as a witness at trial. The prosecutor argued that the police report referred to "following the snow tracks and the shape of footprints up to the defendant's front porch," and that Breeden was the officer who had followed the footprints. He argued that there was no surprise to the defense because Breeden's testimony would be "identical to what is reflected in Officer Rogers's report." The trial court allowed the substitution, stating that "the testimony of this witness is not different from that shown in the police reports." The court allowed the defense to interview Breeden at the courthouse prior to his testimony.

Breeden was the State's final witness at trial. He testified that there were spots of snow shaped like a shoe on Mrs. Smith's porch. He then drew a diagram showing the tracks leaving Mrs. Smith's yard, disappearing at the road, and reappearing and leading to Reding's trailer, which he referred to as "Hadley's" trailer. He testified that the tracks in front of "Hadley's" trailer were "very similar in size and general shape" to those in front of Mrs. Smith's trailer, and that he only found one set of tracks. He also testified that "Hadley's" trailer was directly visible from Mrs. Smith's front door. On cross-examination, Breeden stated that

although he couldn't be sure that the tracks in front of Reding's trailer were the same as those in front of Mrs. Smith's trailer, they were "generally very similar." He was not asked about the contents of Rogers's or Parrill's report.

During the defense's case, Maples and Johnston put on no alibi evidence for the night of December 14 and early morning of December 15, and they did not call Rogers to testify about the footprints, even though Rogers was at the courthouse. When Hadley testified, they failed to ask him any questions regarding his whereabouts the morning of December 15; they asked him only whether he had gone to Mrs. Smith's trailer on December 15 and tried to break in.

During closing arguments the prosecutor capitalized on the December 15 evidence and made several references to the footprints in the snow. He argued, in part, that Hadley had tried to enter Mrs. Smith's trailer a second time and then walked through the snow to his trailer; that there were "tracks straight from her house to Russell Hadley's house"; that the officers "followed a bee-line straight from Mrs. Smith's trailer back to Russell Hadley's trailer"; and that "the footprints . . . don't lie."

## IV.

### A.

We review the district court's legal conclusions de novo, and its factual findings for clear error. We accord deference to the district court's credibility determinations. Sidebottom v. Delo, 46 F.3d 744, 752 (8th Cir.), cert. denied, 116 S. Ct. 144 (1995); Singleton v. Lockhart, 962 F.2d 1315, 1321 (8th Cir.), cert. denied, 506 U.S. 964 (1992). The district court concluded that Maples and Johnston performed deficiently when they failed to investigate Hadley's alibi for December 15 and consequently were unable to present alibi evidence at trial. We agree.

To show that his counsel was ineffective, Hadley must show that his attorneys' performance was deficient and that their deficient performance prejudiced his defense.  Strickland v. Washington, 466 U.S. 668, 687 (1984).  Counsel has a duty to make a reasonable investigation based on the information provided by a defendant, particularly when an alibi is involved.  See Strickland, 466 U.S. at 691; Sidebottom, 46 F.3d at 752. To establish prejudice from counsel's failure to investigate a potential witness, a petitioner must show that the witness would have testified and that their testimony "would have probably changed the outcome of the trial."  See Stewart v. Nix, 31 F.3d 741, 744 (8th Cir. 1994).

Maples and Johnston both testified that they were aware prior to trial of the possible link between Hadley and the December 15 incident and the possibility that evidence regarding December 15 might come in at trial. The district court credited Hadley's testimony that he told Johnston and Maples that Maggie Burdick would testify that he was with her at a party the night of December 14-15.  Burdick testified at a deposition in the present action that she was with Hadley until 6:00 or 7:00 a.m. the morning of December 15.  Maples testified that he knew that Hadley had alibi witnesses and that Hadley had provided information to either him or Johnston regarding his alibi, yet he failed to investigate or call any alibi witnesses.  Maples basically left the investigation up to Johnston. Johnston testified that Burdick's name was in his notes and that he remembered trying to call her once.  When he found she was not an alibi for December 11, he crossed her name off without asking her about December 15.

Despite Hadley's claim of innocence and his presentation of potential alibi evidence to counsel, Johnston and Maples made no effort to investigate Hadley's alibi for December 15, despite their admitted knowledge that the attempted break-in was an issue in the case.  Given the crucial nature of the December 15 evidence,

-8-

counsels' failure to investigate constituted deficient performance.[3]  See Tosh v. Lockhart, 879 F.2d 412, 414 (8th Cir. 1989) (failure to obtain alibi testimony of known, relevant witnesses); Thomas v. Lockhart, 738 F.2d 304, 308 (8th Cir. 1984) (investigation deficient where it consisted of simply reading police file and not investigating defendant's claim of innocence or three alibi witnesses whose names were provided by defendant). Furthermore, Hadley has shown that Burdick would have testified at trial, what the contents of her testimony would have been, and that her testimony "would have probably changed the outcome of the trial."  Stewart, 31 F.3d at 744.

Maples testified that once the trial court denied the defense's motion in limine and ruled that evidence of the December 15 attempted break-in would be admitted, he knew it was important to establish an alibi for December 15.  Defense counsel failed to do so, presenting no alibi evidence whatsoever to the jury.[4]  In fact, Maples arguably made Hadley look suspect while testifying by asking Hadley whether he tried to break in to Mrs. Smith's trailer on December 15 and then failing to ask Hadley about his whereabouts on December 15.

**B.**

Maples and Johnston were both aware of Rogers's report before trial and were aware that the prosecutor's handwritten addition differed from the body of the report.  Before trial, however, they

---

[3]The night before trial was the first time counsel told Hadley that they thought evidence of the December 15 attempted break-in was going to be admitted, and they advised him to plea bargain.

[4]Counsel missed one opportunity to do so at trial when Nancy Potter was testifying.  Potter testified that she had seen Hadley at a party subsequent to December 11, but counsel asked no follow-up questions.  Potter has attested that the party she referred to was Burdick's party on December 14-15, and that she was sure Hadley was there as late as 5:00 a.m.

-9-

believed that the body of the report was helpful. They did not investigate the handwritten addition because Rogers was the endorsed witness, and no witness was endorsed to testify regarding who had inserted the additional language.

We agree with the district court that Maples's and Johnston's lack of pre-trial investigation regarding the report may not have been deficient performance. When the prosecutor used his notation on Rogers's report to convince the trial court to allow Breeden to testify instead of Rogers, however, Maples and Johnston, as they have now acknowledged, were put on notice that Breeden's testimony would seriously implicate Hadley. We agree with the district court that counsel performed deficiently with respect to the manner in which they dealt with Officer Breeden's testimony at trial.

Defense counsel had not interviewed Breeden prior to trial. When Johnston interviewed Breeden the day of trial, what Breeden told him was consistent with how Breeden ultimately testified. Maples testified that after the subject of Breeden's testimony became apparent, there was no strategic reason for not impeaching Breeden with Rogers's report and it would have been effective to call Rogers to impeach Breeden and offer testimony favorable to Hadley. Despite his knowledge of Rogers's report, Johnston could not explain why he failed to address the issue in his cross-examination of Breeden. Maples's and Johnston's failure to use the police reports to impeach Breeden, coupled with their failure to affirmatively present Rogers's testimony as exculpatory defense evidence, allowed Breeden's devastating footprint testimony, emphasized during the prosecutor's closing argument, to go virtually unchallenged.

Furthermore, Johnston knew that Hadley had said that he did not have any shoes that would have made the treaded footprint. Hadley told counsel to call his half-brother, Steven Reding, who, besides bolstering Hadley's alibi for December 11, would testify

that when Hadley went to prison Reding received all of Hadley's shoes, none of which had soles with tread. Reding testified that Maples never contacted him about testifying, even though Reding was at the courthouse the day of Hadley's trial. The failure to call Reding allowed the prosecutor to argue, "Well, where is the brother? . . . If he has such a fantastic alibi wouldn't his own brother come to court and tell us about it?"

## C.

To demonstrate prejudice, Hadley "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694; see also Lockhart v. Fretwell, 113 S. Ct. 838, 844 (1993) (prejudice component "focusses on the question whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair"). We agree with the district court that given the weakness of the State's case regarding the December 11 attack, if the jury believed "`that [Hadley] was the December 15 culprit, there seems little doubt that a conviction was inevitable.'" Memorandum and Order at 14. In the absence of alibi witness testimony and in light of the unchallenged testimony and argument about the straight-line tracks from the victim's trailer to the Hadley trailer, the jury could hardly have believed otherwise. Counsels' failure to introduce the available alibi testimony and to challenge the footprint testimony constituted deficient performance that resulted in prejudice as defined in Strickland.

## CONCLUSION

We do not minimize the gravity of overturning a state-court conviction, now a decade old, arising out of a sexual attack upon

an elderly woman, now deceased, in the supposedly safe confines of her own home. Nevertheless, we are constrained to agree with the district court that trial counsels' failure to adequately deal with the evidence linking Hadley to the December 15 attempted break-in is sufficient to undermine confidence in the outcome of the trial.

The judgment is affirmed.[5]

A true copy.

Attest:

CLERK, U. S. COURT OF APPEALS, EIGHTH CIRCUIT.

_____

[5]In light of our disposition of the State's appeal, we decline to reach the issues Hadley raises in his cross-appeal.