# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-1464

_____

Joyce A. Johnson

*Plaintiff - Appellant*

v.

MFA Petroleum Company, doing business as Break Time; Casey's General Stores, Inc.; Quiktrip Corporation

*Defendants - Appellees*

_____

Appeal from United States District Court
for the Western District of Missouri - Kansas City

_____

Submitted: September 20, 2012
Filed: December 3, 2012

_____

Before WOLLMAN, BEAM, and MURPHY, Circuit Judges.

_____

MURPHY, Circuit Judge.

On behalf of an asserted class Joyce Johnson, a citizen of Missouri, brought this action in state court against gasoline station operators MFA Petroleum, Casey's General Stores, and Quicktrip Corporation (the operators) under the Missouri Merchandising Practices Act (the state act), Mo. Rev. Stat. § 407.020, alleging the defendants misrepresent the grade of gas pumped at their stations. Casey's General

Stores removed the case to the federal district court asserting that Johnson's claim was completely preempted by the Petroleum Marketing Practices Act (PMPA), 15 U.S.C. § 2801 et seq., or, alternatively, that there was diversity jurisdiction under the Class Action Fairness Act (CAFA), 28 U.S.C. § 1711 et seq. Johnson moved to remand, denying that her claim was completely preempted and also asserting that it fell within CAFA's local controversy exception to federal jurisdiction. The district court concluded that Johnson's claim was completely preempted by PMPA and denied her motion to remand to state court. Johnson appeals, and we reverse and remand.

I.

Joyce Johnson is a consumer of premium grade gasoline in Missouri. She alleges that the operators misrepresent the grade of gasoline sold at their stations from "single hose blender pumps." This type of pump dispenses all available grades of gas through a single hose and nozzle after a purchaser pushes a designated button to obtain the grade each prefers. Johnson alleges that when a purchaser of premium gas uses a pump immediately after someone else has purchased a lower grade, the premium customer actually receives up to one half gallon of lower grade gas still remaining in the hose. According to Johnson, the use of this type of pump violates a Missouri statute which prohibits "[t]he act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.

Johnson's complaint was pled as a class action on behalf of all other citizens of Missouri who have purchased premium gasoline at one of the operators' gas stations. She seeks damages and injunctive relief on behalf of the class. Both Johnson and MFA Petroleum are citizens of Missouri, while Casey's General Stores is a citizen of Iowa and QuickTrip is a citizen of Oklahoma.

Casey's General Stores removed the case to the district court, alleging two grounds for federal question jurisdiction. First, Casey's contended that there was federal question jurisdiction under the doctrine of complete preemption. See Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003). According to Casey's, Johnson's allegations "attack the disclosure of octane labels on [the operators'] fuel pumps," a subject regulated by Subchapter II of PMPA. 15 U.S.C. §§ 2821, 2824. The operators assert that a preemption provision in Subchapter II, which prevents states from adopting laws with respect to "any act or omission" regulated by the subchapter, completely preempts Johnson's claim. Id. § 2824(a). Second, Casey's asserts that diversity jurisdiction exists under CAFA. It argues that all potential class members are citizens of Missouri while two of the three defendants are not, the class seeks damages exceeding CAFA's $5 million threshold, and the complaint contemplates a class size of at least 100 persons. See 28 U.S.C. § 1332(d)(2), (5).

All of the parties filed motions in the district court. The operators moved to dismiss for failure to state a claim, asserting that Johnson's claim was expressly preempted and that alternatively the operators were entitled to a safe harbor defense because they had been acting in accordance with Missouri state requirements for the pricing of their gasoline. Johnson moved to remand to state court. She argued that the doctrine of complete preemption does not apply to this case because the argument raised by the operators is merely a federal defense which does not provide federal question jurisdiction. Johnson also argues that removal was improper under CAFA because her claim fell under the statute's "local controversy" exception. See 28 U.S.C. § 1332(d)(4)(A).

The district court denied Johnson's motion to remand and granted the operators' motion to dismiss. The court determined that it had federal question jurisdiction because it concluded that Johnson's claim was completely preempted by PMPA and that dismissal was therefore required. The district court declined to address the alternative question of whether there would be diversity jurisdiction over the case under CAFA.

Johnson appeals the dismissal of the case, renewing the arguments she made in the district court questioning the availability of complete preemption here. She also urges this court to consider the merits of whether her claim fits within the local controversy exception to federal jurisdiction under CAFA. The operators respond that the district court correctly ruled that Johnson's claim is completely preempted and properly dismissed the case. If its earlier decision were to be reversed, however, the operators urge this court to direct the district court to develop the record to determine whether federal jurisdiction exists under CAFA.

Johnson argues that the district court erred by deciding that her claim is completely preempted and that there is federal question jurisdiction here. She contends that the district court was mistaken in its analysis of preemption, confusing the separate and distinct doctrines of ordinary and complete preemption. A significant difference exists between these doctrines since ordinary preemption would raise a defense against Johnson's state law claim, but it would not provide for federal jurisdiction. The "existence of a federal question is an issue of law which we review de novo." Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 542 (8th Cir. 1996).

II.

As master of the complaint, a state plaintiff can generally avoid removal to federal court by alleging only state law claims. Gaming Corp., 88 F.3d at 542 (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Under the well pleaded complaint rule, a federal question must appear on the face of the plaintiff's complaint in order to create federal question jurisdiction. Caterpillar, 482 U.S. at 392. If the plaintiff's action is brought under state law, the case may not be removed under federal question jurisdiction even if federal law were to provide a defense, and "even if both parties concede that the federal defense is the only question truly at issue." Id. at 393.

-4-

The rule that a federal defense does not create federal jurisdiction includes the defense of preemption. Id. Such a defense is not sufficient to establish federal jurisdiction even in circumstances where it appears likely that the case would eventually be dismissed on the basis of preemption. See Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 66 (1987) ("[E]ven an 'obvious' pre-emption defense does not, in most cases, create removal jurisdiction.").

Complete preemption only applies where a federal statute "so completely pre-empt[s] a particular area that any civil complaint raising this select group of claims is necessarily federal." Id. at 65. A conclusion that there is complete preemption effectively maintains that "the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute." King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003). For a statute to provide federal question jurisdiction under this exception, it must have "extraordinary pre-emptive power," a conclusion courts are reluctant to reach. See Metro Life, 481 U.S. at 65. Such caution is warranted for two reasons. First, a finding of complete preemption "significantly shifts the nature of the law that would be applied to the claim." King, 337 F.3d at 426. Second, overly aggressive application of the complete preemption doctrine would swallow up the well pleaded complaint rule in its entirety. Aaron v. National Union Fire Ins. Co., 876 F.2d 1157, 1165 (5th Cir. 1989).

Sometimes there is confusion between complete preemption and what has been termed "ordinary" preemption. See, e.g., Lontz v. Tharp, 413 F.3d, 435, 440 (4th Cir. 2005). Ordinary preemption is a federal defense that exists where a federal law has superseded a state law claim. See Nordgren v. Burlington N. R.R. Co., 101 F.3d 1246, 1248 (8th Cir. 1996). Express preemption occurs where a federal law explicitly prohibits or displaces state regulation in a given field. ERISA is a good example, for it explicitly states that, with enumerated exceptions, its provisions "shall supersede any and all State laws" relating to employee benefit plans. 29 U.S.C. § 1144(a).

Preemption may also be applied in situations where a state statute directly conflicts with federal law, Florida Lime & Avocado Growers, Inc. v. Paul, 373 U.S. 132, 142–43 (1963), or in limited circumstances where "a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible." Mo. Bd. of Exam'rs for Hearing Instrument Specialists v. Hearing Help Express, Inc., 447 F.3d 1033, 1035 (8th Cir. 2006). An assertion that a state claim is preempted by federal law "is a defense to . . . [the] state law claim and not a ground for federal jurisdiction." Evans v. Missouri Pac. R.R. Co., 795 F.2d 57, 58 (8th Cir. 1986) (quoting First Nat'l Bank v. Aberdeen Nat'l Bank, 627 F.2d 843, 851 (8th Cir. 1980) (en banc)) (emphasis original).

The intent of Congress "is the 'ultimate touchstone' guiding preemption analysis." Gaming Corp., 88 F.3d at 544 (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 45 (1987)). The Supreme Court has explained that complete preemption exists only where federal preemption is so strong that "there is . . . no such thing as a state-law claim." Beneficial Nat'l Bank 539 U.S. at 11. In determining whether a state law claim is completely preempted, a court must ask whether Congress intended a federal statute to provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action." Id. at 8. If so, "the cause of action necessarily arises under federal law and the case is removable." Id. at 9.

Complete preemption is thus quite rare. The Supreme Court has recognized complete preemption in only three areas: § 301 of the Labor Management Relations Act, Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968); § 502(a) of ERISA, Metro. Life Ins. Co. v. Taylor, 481 U.S. 58 (1987); and §§ 85 and 86 of the National Bank Act, Beneficial Nat'l Bank v. Anderson, 539 U.S. 1 (2003). Our court has additionally recognized complete preemption in certain particular areas of "special federal interest." Gaming Corp., 88 F.3d at 543. Such special federal interests have been recognized in two railroad related statutes, the Federal Railroad Safety Act, 45

U.S.C. §§ 421 et seq. (repealed by the Act of July 5, 1994, P.L. 103-272, § 7(b), 108 Stat. 1379), see Peters v. Union Pacific Railroad Co., 80 F.3d 257 (8th. Cir. 1996), and the Railway Labor Act, 45 U.S.C. §§ 151 et seq., see Deford v. Soo Line Railroad Co., 867 F.2d 1080 (8th Cir. 1989), as well as the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701 et seq., see Gaming Corp., 88 F.3d at 543.

III.

The operators base their complete preemption argument on PMPA, the Petroleum Marketing Practices Act, 15 U.S.C. § 2801 et seq. PMPA has two main subchapters. The first has no relevance here since it governs the relationship between petroleum franchisors and franchisees and sets out standards by which a petroleum franchise can be terminated. 15 U.S.C. § 2801 et seq. In the event that a franchise is terminated in violation of the law, franchisees are permitted to bring a civil action against the franchisor in federal court. 15 U.S.C. § 2805(a). Subchapter II of PMPA regulates octane disclosure requirements, including both the form and content of gas station octane rating displays. 15 U.S.C. § 2821 et seq. Enforcement of the provisions in Subchapter II of PMPA is given solely to the Federal Trade Commission, 15 U.S.C. § 2823, and Congress provided for no private right of action.

The district court relied on Alvarez v. Chevron Corp., 656 F.3d 925 (9th Cir. 2011), in deciding that Subchapter II completely preempts Johnson's state law claim. Although the Ninth Circuit concluded in Alvarez that a complaint with somewhat similar allegations was preempted under federal law, there are critical differences between the procedural posture in the two cases. The Alvarez court had diversity jurisdiction over its case and was addressing only the question of whether there was ordinary preemption, not whether there was complete preemption. Id. at 930. In contrast, the trial court here relied on complete preemption to conclude that there was federal jurisdiction over this case.

Several cases interpreting Subchapter I of PMPA were addressed by the district court in reaching its decision. Subchapter I governs petroleum franchise relationships which are not at issue in Johnson's case. While no circuit court has addressed whether Subchapter II of PMPA completely preempts state law claims, several trial courts have concluded that there is complete preemption under Subchapter I. See, e.g., C.A.L.L. Grp., Inc. v. Exxon Mobil Corp., No. 08-CV-391-PB, 2009 WL 2513604 (D. N.H. Aug. 14, 2009); Mehdi-Kashi v. Exxon Mobil Corp., No. Civ.A. H-01-719, 2002 WL 32052603 (S.D. Tex. Jan. 7, 2002). The district court cited these decisions and reasoned that because Subchapter II contains broader preemptive language than Subchapter I, if the latter completely preempts state law claims then the former must as well. Compare 15 U.S.C. § 2806(a)(1) with 15 U.S.C. § 2824.

Johnson points out significant differences within the federal statute: Subchapter I specifically creates a federal cause of action, 15 U.S.C. § 2805(a), while Subchapter II does not. She argues that for a court to find complete preemption, there must be a federal cause of action replacing the asserted state law claim. The operators counter that in this circuit a federal cause of action is not a requirement for complete preemption.

The question of what conditions are necessary for complete preemption has vexed the circuit courts since the Supreme Court introduced the concept in the Avco case in 1968. Avco Corp. v. Aero Lodge No. 735, 390 U.S. 557 (1968).[1] In explaining in Avco why it was departing from the general requirements of the well pleaded complaint rule, the Court cited portions of its prior case law holding that § 301 of the LMRA "absorb[s]" any state law applying federal labor policy, thus rendering any claim made through such a state law one that actually arises under the laws of the United States. 390 U.S. at 560 (quoting Textile Workers Union of

_____

[1] While Avco is generally credited as the first "complete preemption" case, the Supreme Court did not use that term in its opinion. It appears to have been first used by the Court in Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 24 (1983).

-8-

America v. Lincoln Mills, 353 U.S. 448, 457 (1957)).  Little guidance was given, however, as to what other qualities a law must have so that it does not merely "preempt" but goes further to "absorb" state law on the subject.  As a result, in the years following the Avco decision  in 1968 there was a sharp split within the lower courts on whether a federal defense of preemption creates a basis for federal removal jurisdiction.  See Mary P. Twitchell, Characterizing Federal Claims: Preemption, Removal, and the Arising-Under Jurisdiction of the Federal Courts, 54 Geo. Wash. L. Rev. 812, 834–40 (1986).

Our en banc court answered the question of what prerequisites are necessary for complete preemption in 1980.  First Nat'l Bank v. Aberdeen Nat'l Bank, 627 F.2d 843 (8th Cir. 1980) (en banc).  Judge Henley, writing for a unanimous court in Aberdeen, pointed out that Avco did not "invalidate the generally accepted principle that defensive assertion of federal preemption in response to a state law claim may not constitute a ground for removal." Id. at 853.  Our court agreed that the key factor leading to complete preemption in Avco was the availability of a replacement federal right of action which superseded the state law claim.  Id. (citing 14 Wright, Miller, & Cooper § 3722, at 80 (Supp. 1978)). Since the plaintiffs in Aberdeen lacked such a replacement right of action, there could be no removal jurisdiction based on federal jurisdiction.  Id.

Subsequent Supreme Court precedent confirmed the conclusions our en banc court had drawn in Aberdeen.  In fact, the Court cited the Aberdeen decision for the principle that a claim of federal preemption does not create federal jurisdiction even when it is the only disputed issue in the case.  Franchise Tax Bd. v. Constr. Laborers Vacation Trust, 463 U.S. 1, 12 & n. 11 (1983).  Most recently in Beneficial National Bank, the Court clarified that a state law claim is completely preempted only when Congress has created a federal statute that provides "the exclusive cause of action for the claim asserted and also set[s] forth procedures and remedies governing that cause of action." 539 U.S. at 8.

We have had occasion subsequent to the Supreme Court's Beneficial National Bank decision to confirm that removal under the complete preemption doctrine is proper only in circumstances where "a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted." Thomas v. U.S. Bank Nat'l Ass'n ND, 575 F.3d 794, 797 (8th Cir. 2009). It is difficult to maintain that a federal statute is meant to be the "exclusive cause of action" for a given claim when it does not create any cause of action at all. Other circuit courts generally agree. For example, in a well reasoned Fourth Circuit opinion, Judge Luttig pointed out that an available federal cause of action is an essential prerequisite to a finding of complete preemption, for a "vital feature of complete preemption is the existence of a federal cause of action that replaces the preempted state cause of action." King, 337 F.3d at 425. See also Rogers v. Tyson Foods, Inc. 308 F.3d 785, 788 (7th Cir. 2002) (collecting cases).

The operators attempt to show that our court does not require an available federal cause of action in order for there to be complete preemption. They focus on a statement in our opinion in Gaming Corp. to the effect that "[t]he issue of whether complete preemption exists is separate from the issue of whether a private remedy is created under a federal statute. Complete preemption can sometimes lead to dismissal of all claims in a case." 88 F.3d at 547 (citation omitted). The quoted language is true in the limited sense intended, for a plaintiff's federal cause of action may be doomed to fail. That possibility does not mean that the plaintiff necessarily has no cause of action in the first place, however.

Our decision in Gaming Corp. relied on Caterpillar, 482 U.S. at 391 n.4, which had referred back to the Court's teaching in Avco. While considering the LMRA in Avco, the Court held that removal was proper under complete preemption even if the remedy sought was not available in federal court, with the result that removal in such a case could end in dismissal of the complaint. 390 U.S. at 561. Avco made clear that "the nature of the relief available after jurisdiction attaches is . . . different from the question whether there is jurisdiction to adjudicate the controversy." Id. Although complete preemption requires that a federal cause of action be available to

-10-

the plaintiff, it does not ensure that the plaintiff will find the remedy she seeks. See Rogers, 308 F.3d at 789.

Other cases cited by the operators to support their argument for complete preemption are also unavailing. In Peters v. Union Pacific R.R. Co., 80 F.3d 257 (8th Cir. 1996), for example, we dismissed a state law claim as completely preempted by the Federal Railroad Safety Act (FRSA). 45 U.S.C. §§ 421 et seq. (repealed by the Act of July 5, 1994, P.L. 103-272, § 7(b), 108 Stat. 1379). We observed that the FRSA had created a "comprehensive administrative adjudication system" for handling the type of dispute at issue in that case. Id. at 262. Since Peters had not exhausted these remedies, he could not maintain a federal action. Had Peters followed the proper administrative procedures, he might have been able to go forward in federal court. Contrary to the operators' claims, the fact that the FRSA requires a claimant to go through an administrative procedure before bringing a federal action does not mean that no right to action is provided at all. See 49 U.S.C. § 20109(d)(3–4) (setting out the procedures for judicial review after administrative review is exhausted).

Our court has considered two other cases in the last decade in which complete preemption was raised in the FRSA context. In Chapman v. Lab One, 390 F.3d 620 (8th Cir. 2004), we considered whether the state law claims of two former railroad employees complaining about the negligent handling of their drug tests were preempted. The question for the first was whether his claim was defensively preempted by FRSA, and we decided it was not. Id. at 629. The question for the second was whether there was federal jurisdiction under complete preemption; we decided there was not for two reasons. First, if FRSA had not even defensively preempted the first common law claim, it could not carry the "extraordinary" preemptive force necessary to establish complete preemption in the second case. Second, the relevant part of FRSA lacks a private right of action unlike "other statutory schemes in which courts have found complete preemption." Id. Two years later, in Lundeen v. Canadian Pacific Ry. Co., 447 F.3d 606 (8th Cir. 2006), the question arose whether there was a conflict between our decision in Chapman and our statement in Gaming Corp. that complete preemption can exist even when there is no

-11-

private remedy created under federal law. Id. at 613 n. 4 (citing Gaming Corp., 88 F.3d at 547).

A close analysis of these decisions shows there is no conflict between Chapman and Gaming Corp.. That is because the issue of whether there is a federal remedy is different from whether there is a federal cause of action. Chapman's conclusion that a federal cause of action is a necessary component of complete preemption does not conflict with the conclusion in Gaming Corp. that an available federal remedy is not required. The Lundeen court believed that "absent en banc review" it was constrained by Peters, which it viewed as holding that any state law challenge to railroad safety procedures covered by FRSA was completely preempted. Id. at 614–15. Lundeen explicitly linked its decision to the special circumstances of FRSA, a statute Peters had viewed as having a "total preemptive intent." Peters, 80 F.3d at 262 (quoting Nat'l Ass'n of Reg. Util. Comm'rs v. Coleman, 542 F.2d 11, 13 (3d Cir. 1976)). Given the Supreme Court's holding in Beneficial National Bank and our en banc decision in Aberdeen, both of which strongly indicate that a federal cause of action is a necessary prerequisite to complete preemption, our decision in Lundeen must be viewed within the specific FRSA and railroad context.

Other circuits generally agree that the lack of a federal cause of action is fatal to a complete preemption argument. See, e.g., King, 337 F.3d at 425; Rogers, 308 F.3d at 788; Wayne v. DHL Worldwide Express, 294 F.3d 1179, 1184 (9th Cir. 2002); Schmeling v. NORDAM, 97 F.3d 1136, 1342 (10th Cir. 1996); Strong v. Telectronics Pacing Sys., Inc., 78 F.3d 256, 260 (6th Cir. 1996); Hudson Ins. Co. v. American Elec. Corp., 957 F.2d 826, 830 (11th Cir. 1992); Aaron v. Nat'l Union Fire Ins. Co., 876 F.2d 1157, 1164–1165 (5th Cir. 1989); Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co., 858 F.2d 936, 942 (3d Cir. 1988). This principle is completely consistent with our en banc decision in Aberdeen, an en banc decision perhaps inadvertently overlooked by the parties as well as the district court.

We conclude that without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete

preemption. This presumption exists separate from any traditional reticence courts may have to conclude that Congress meant to leave a claimant without any remedy. See Gaming Corp., 88 F.3d at 547. Courts should generally be highly reluctant to find complete preemption when there is no substitute federal cause of action. The lack of a substitute federal action would make it doubtful that Congress intended for "the federal statutes at issue [to] provide[] the exclusive cause of action for the claim asserted." Beneficial Nat'l Bank, 539 U.S. at 8.

This reasoning is also consistent with the Supreme Court's jurisprudence in its most recent discussions of complete preemption. As the Court has pointed out, complete preemption exists when a claim, even though styled as one of state law, is "in reality based on federal law." Id. In Beneficial National Bank, for example, an usury claim brought under state law was "in reality" a claim under the National Bank Act, which permits a private action to recover excessive interest. 12 U.S.C. § 86. In Metropolitan Life Insurance Co., an action asserting improper processing of benefit claims was "in reality" an ERISA claim and that federal statute provides for civil enforcement. 29 U.S.C. § 1132(a). Although the Avco plaintiffs styled their claim to enjoin a union strike as a state law issue, it was "in reality" a claim under the Labor Management Relations Act of 1947. 29 U.S.C. § 185. See Beneficial Nat'l Bank, 539 U.S. at 7–8. In all of these Supreme Court cases, a federal statute "provided the exclusive cause of action for the claim asserted" by also specifying procedures and remedies governing that cause of action, leading to the Court's conclusions that there was complete preemption. Id. at 8.

In contrast to the statutes discussed in the leading Supreme Court cases on complete preemption, Subchapter II of PMPA has no language creating a federal cause of action which could substitute for Johnson's state law claim. This renders it materially distinct from the limited array of cases in which the Court has found complete preemption.

Because complete preemption is a question of federal jurisdiction over a claim, a conclusion that it does not exist at the outset does not mean that a plaintiff will

-13-

ultimately prevail over a preemption defense on her underlying claim. See King, 337 F.3d at 425. Congress maintains the power to "completely eliminate certain remedies by preempting state actions, while providing no substitute federal action . . . . [b]ut in such cases, preemption serves only as a federal defense, the barred claims are not completely preempted, and thus not removable to federal court." Id. Regardless of whether a remedy exists for Johnson's state law claim or whether it will ultimately be preempted due to a conflict with federal law, cf. Franchise Tax Bd, 463 U.S. at 26, the absence of a federal cause of action in Subchapter II means that Johnson's claim is not completely preempted and that there is no federal jurisdiction over that claim. See King, 337 F.3d at 425.

IV.

The operators argued in the alternative in the district court that there is also federal jurisdiction under the Class Action Fairness Act. CAFA provides for diversity jurisdiction over a class action if the amount in controversy exceeds $5 million, any member of the plaintiff class is a citizen of a different state from any defendant, and the class consists of at least 100 persons. 28 U.S.C. § 1332(d)(2), (5). Johnson's claim meets all of these requirements, but she argues that it fits within CAFA's local controversy exception to that jurisdictional exclusion. 28 U.S.C. § 1332(d)(4). For a class action to fit in the local controversy category under CAFA, more than two thirds of the proposed plaintiff class must be citizens of the state in which the action was filed. In addition there must be at least one defendant 1) who is a citizen of the state in which the action was filed, 2) whose conduct forms a "significant basis" for the class claim, and 3) from whom the class seeks "significant relief." 28 U.S.C. § 1332(d)(4)(A)(i)(I–II). Johnson argues that she meets these requirements since her proposed class is predominantly comprised of Missouri citizens and since MFA Petroleum, whose conduct forms a "significant basis" for her claim and from whom she seeks "significant relief," is also a citizen of Missouri.

The district court did not reach any jurisdictional issue under CAFA. Neither did Johnson develop a CAFA argument in her opening brief on her appeal. Since the

-14-

question of whether there is jurisdiction under CAFA would benefit from full development and adversarial briefing, we remand those issues in order for the district court to consider whether there is federal jurisdiction over this case under CAFA.

V.

Accordingly, we reverse the ruling by the district court that Johnson's state claim is completely preempted and remand the case for further proceedings consistent with this opinion and for determination of whether there is federal jurisdiction over this case under CAFA.

BEAM, Circuit Judge, dissenting.

In reviewing and reversing the well-reasoned judgment of the district court, the court contends that there cannot be complete preemption, and thus federal court removal jurisdiction, unless the preempting federal legislation provides "a replacement federal right of action which supersede[s] the state law claim." Ante at 9. In support of its reasoning, the court relies upon First Nat'l Bank v. Aberdeen Nat'l Bank, 627 F.2d 843, 853 (8th Cir. 1980) (en banc) and Thomas v. U.S. Bank Nat'l Ass'n ND, 575 F.3d 794, 797 (8th Cir. 2009) (holding that preemption is proper where a federal statute completely displaces state law and it is clear Congress meant the federal statute to be the exclusive cause of action for the type of claim asserted). I disagree with this untoward conclusion, both as a matter of policy and as a correct analysis of applicable precedent.

First the policy. Complete preemption (sometimes labeled field preemption) applies where a federal statute "so completely preempt[s] a particular area that any civil complaint raising [a] select group of claims is necessarily federal." Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 63 (1987). Indeed, where a federal law completely occupies the field of regulation so that by implication there is no room for state regulation and the coexistence of federal and state regulation is not possible there is "complete preemption." Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003).

-15-

And, congressional intent is the "ultimate touchstone" in the preemption analysis. Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 544 (8th Cir. 1996) (quotation omitted). Such are the exact circumstances at work in this case.

Second, this circuit's precedent both before and after Beneficial and after this court's decision in Gaming Corp. does not require a definitive statutory formulation of a private cause of action prior to the occurrence of complete preemption, although Congress does so provide on occasion. See Beneficial, 539 U.S. at 8 (describing ERISA and LMRA as examples of federal statutes that completely preempt state law and provide "the exclusive cause of action for the claim asserted and also set forth procedures and remedies governing that cause of action"). Thomas simply overstates the holding in Beneficial and cannot be squared with earlier precedent of this circuit set forth in Lundeen v. Canadian Pac. Ry. Co., 447 F.3d 606 (8th Cir. 2006), vacated on other grounds by 532 F.3d 682 (8th Cir. 2008).

The statute at issue here exemplifies these principles. The federal Petroleum Marketing Practices Act (PMPA) regulates the testing and disclosure of motor fuel octane. 15 U.S.C. §§ 2821-2824. The PMPA is divided into three subchapters. Subchapter I addresses the petroleum franchise relationship. Subchapter II addresses the testing, certification, labeling and disclosure of a gasoline's octane rating. Subchapter III addresses the subsidization of motor fuel marketing. Subchapter II is the relevant section of the PMPA for purposes of Johnson's claim in this case.

The PMPA requires the Federal Trade Commission (FTC) to adopt rules to regulate octane disclosures. 16 C.F.R. §§ 306.0 et seq. The FTC has implemented a regulation requiring retailers to "post the automotive fuel rating of all automotive fuel [they] sell to consumers." Id. § 306.10(a). This rule also contains detailed requirements for labeling or marketing a gasoline's octane or fuel rating, dictating the color, dimensions, and font for all labels. Id. § 306.12. In addition, the regulation provides that "[n]o marks or information other than that called for by this rule may appear on the labels." Id. § 306.12(d). The regulations apply to single-hose blender pumps, like the pumps at issue in this litigation. Id. § 306.10. Subchapter II of the

PMPA contains preemption provisions, preempting different or additional state requirements that are not "the same as" federal requirements. 15 U.S.C. § 2824(a).

Citing Beneficial, the court claims that because the PMPA does not have a civil enforcement scheme, it cannot completely preempt state law. Ante at 9. But, Beneficial did not hold that federal statutes without a private enforcement scheme can never preempt state law. And, as earlier noted, Lundeen, rejects this proposition.

I agree with the district court that this claim is substantively the same as Alvarez v. Chevron Corp., 656 F.3d 925 (9th Cir. 2011). In that case, plaintiffs brought a putative class action alleging that defendant gas stations failed to deliver 100 percent of the fuel at the octane rating advertised when plaintiffs purchased fuel at a higher octane rating than the previous customer at a single-nozzle pump. As such, premium grade purchasers argued that they were overcharged when the prior customer had purchased mid-range or regular grade fuel and sought monetary damages in addition to the development of a more accurate dispenser and pricing technology. The Alvarez plaintiffs based their case on a variety of state common law claims in addition to statutory claims under California consumer statutes. The Alvarez plaintiffs argued that they were not requesting any modification of the octane rating labels but rather sought additional disclosures regarding the "residual fuel" issue. The district court dismissed plaintiffs' complaint, holding that it was preempted by the PMPA. The Ninth Circuit affirmed, noting that the PMPA contains a "broad preemption against state and local laws and regulations addressing any acts or omissions covered by the PMPA." Id. at 934. The court explained that the disclosure remedy sought was designed to warn customers at the point of sale that the grade of fuel they purchased may or may not actually be delivered, regardless of its posted fuel grade. This notice would have had the effect of challenging the accuracy and undermining the uniformity of federal octane labeling regulations promulgated by the FTC. Id. at 935. The court further noted that "[t]o the extent Plaintiffs' other statutory claims seek *relief* that would require a corrective disclosure at the point of sale, we conclude that they are also preempted by federal law." Id. at 935 n.11.

-17-

Johnson's claims are not meaningfully distinguishable from the ones asserted in <u>Alvarez</u>.  Accordingly, following <u>Lundeen</u>, <u>Alvarez</u> and <u>Beneficial</u>, I would reject the idea that Congress can never effect complete preemption unless it first creates a specifically formulated federal private cause of action.  I dissent.

_____