# United States Court of Appeals
### For the Eighth Circuit
_____

No. 19-1816
_____

John Krakowski, individually and on behalf of all others similarly situated

*Plaintiff - Appellant*

v.

Allied Pilots Association

*Defendant - Appellee*
_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis
_____

Submitted: January 15, 2020
Filed: August 28, 2020
_____

Before BENTON, GRASZ, and STRAS, Circuit Judges.
_____

STRAS, Circuit Judge.

A union representing airline pilots collected dues on profit-sharing payments. When one pilot, John Krakowski, sued to get his money back, the central question became whether the lawsuit belonged in state or federal court. Once the union removed the case to federal court, it never went back. The district court allowed it to remain under the complete-preemption doctrine. We reverse to have this case returned to state court.

I.

Like many companies, American Airlines decided to share its profits with its employees through annual cash payments. Krakowski received one but was allowed to keep only part of it. American Airlines withheld one percent for Allied Pilots Association, his union, for "dues." Krakowski believes that the whole payment belongs to him, and he asked for it back.

When Allied Pilots refused, Krakowski sued in state court for conversion and unjust enrichment. His theory was that he was entitled to keep the whole payment because it is not "contractual pay" under Allied Pilots's constitution. Believing his claims to be completely preempted by the Railway Labor Act, the union removed the case to federal court. Krakowski requested remand to state court, but the district court agreed with the union.

With both claims preempted, Krakowski faced a choice: amend the complaint or have the suit dismissed. He chose the first option, adding claims based on two federal statutes, including one under the Railway Labor Act. Allied Pilots responded with a motion to dismiss or, in the alternative, for summary judgment. According to the district court, the state-law claims fell away due to preemption, and though the federal claims remained, they did not survive summary judgment. Krakowski appeals both parts of the ruling, as well as the earlier decision not to remand the case back to state court.

II.

The critical decision in this case was the denial of Krakowski's remand motion. To get there, the district court relied on the complete-preemption doctrine: the idea that the Railway Labor Act "wholly displace[d]" his conversion and unjust-enrichment claims and left only federal claims in their place. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003). Whether the district court correctly applied the

doctrine presents an issue of law that we review de novo. *See Gaming Corp. of Am. v. Dorsey & Whitney*, 88 F.3d 536, 542 (8th Cir. 1996).

With complete preemption, the normal rules of federal jurisdiction do not apply. *See Johnson v. MFA Petroleum Co.*, 701 F.3d 243, 248 (8th Cir. 2012). Rather than determining whether a federal question exists by looking only at the face of a well-pleaded complaint, complete preemption requires a peek behind it. *See Markham v. Wertin*, 861 F.3d 748, 754 (8th Cir. 2017); *M. Nahas & Co. v. First Nat'l Bank of Hot Springs*, 930 F.2d 608, 611–12 (8th Cir. 1991). The reason is that some statutes have such "extraordinary pre-emptive power" that state claims turn into federal claims, even if none actually appear in the complaint. *Gaming Corp. of Am.*, 88 F.3d at 543 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). Complete preemption "rare[ly]" occurs, *Johnson*, 701 F.3d at 248, and even then, only when a statute "provide[s] the exclusive cause of action for the claim asserted and . . . set[s] forth procedures and remedies governing" it, *Beneficial Nat'l Bank*, 539 U.S. at 8.

## A.

The Railway Labor Act is one of those statutes. *See Deford v. Soo Line R.R. Co.*, 867 F.2d 1080, 1086 (8th Cir. 1989). When it applies, it completely preempts state-law claims that "depend[] on an interpretation of [a collective-bargaining agreement]." *Hawaiian Airlines, Inc. v. Norris*, 512 U.S. 246, 261 (1994); *Gore v. Trans World Airlines*, 210 F.3d 944, 949 (8th Cir. 2000).

Here is why. The Railway Labor Act requires "employees" (like Krakowski) and "carriers" (like American Airlines) to arbitrate "minor disputes," *Deford*, 867 F.2d at 1085 & n.4, *exclusively* before adjustment boards. 45 U.S.C. § 153 First (i); *see Andrews v. Louisville & Nashville R.R. Co.*, 406 U.S. 320, 321–22 (1972) (holding that the arbitration provisions of section 153 First (i) are mandatory). Only certain disputes qualify: those "between an employee or group of employees and a carrier or carriers" that "grow[] out of grievances or out of the interpretation or

application of agreements concerning rates of pay, rules, or working conditions." 45 U.S.C. § 153 First (i); *see Deford*, 867 F.2d at 1085 ("[S]tatutory grievance procedures under the [Railway Labor Act] are the mandatory and exclusive federal remedy for resolving minor disputes.").

In complete-preemption terms, this means that when an employee sues a carrier (or vice versa) and the claim "depends on an interpretation of [a collective-bargaining agreement]," *Norris*, 512 U.S. at 261, the Railway Labor Act "provide[s] the "exclusive cause of action," *Johnson*, 701 F.3d at 248 (quotation marks omitted). And with extensive "procedures and remedies governing" this type of claim, *id*. (quotation marks omitted), it must be heard in federal court.[1]

On the other hand, if a dispute is not "minor," the Railway Labor Act does not completely preempt it. We have already held, for example, that if the controversy does not involve the interpretation of a collective-bargaining agreement, then there is no complete preemption. *Evans v. Mo. Pac. R.R. Co.*, 795 F.2d 57, 58 (8th Cir. 1986); *see Deford*, 867 F.2d at 1087 (explaining the holding of *Evans*). We reach the same conclusion about the requirement that the suit be between at least one employee and one carrier.

For complete preemption, the cause of action must be exclusive. Here, the Railway Labor Act does not require disputes between an employee and a *union* to be heard by an adjustment board, so there is no federal cause of action at all, much less an exclusive one. *See Verville v. Int'l Ass'n of Machinists & Aerospace Workers*, 520 F.2d 615, 618 (6th Cir. 1975); *see also Conley v. Gibson*, 355 U.S. 41, 44 (1957) (recognizing that section 153 First (i) "by its own terms applies only to 'disputes between an employee or group of employees and a carrier or carriers'" (quoting 45 U.S.C. § 153 First (i))), *abrogated on other grounds by Bell Atlantic*

---

[1]Indeed, the Railway Labor Act provides limited judicial review of adjustment-board decisions, 45 U.S.C. § 153 First (q); *see Sullivan v. Endeavor Air, Inc.*, 856 F.3d 533, 537 (8th Cir. 2017), which is consistent with a scheme that is completely preemptive, *see Johnson*, 701 F.3d at 251–52.

*Corp. v. Twombly*, 550 U.S. 544, 561–63 (2007). Without a federal cause of action between *these* parties, complete preemption is off the table. *See Johnson*, 701 F.3d at 252 (explaining that "there is an exceptionally strong presumption against complete preemption" in the absence of "a federal cause of action which in effect replaces a state law claim").

B.

Our precedent is not to the contrary. As far as we can tell, we have never held that the Railway Labor Act completely preempts "a dispute between a union and a union member." *Verville*, 520 F.2d at 618; *see, e.g.*, *Evermann v. BNSF Ry. Co.*, 608 F.3d 364, 366 (8th Cir. 2010); *Gore*, 210 F.3d at 949; *Deford*, 867 F.2d at 1082.

The closest we have come is *Allen v. United Transp. Union*, 964 F.2d 818 (8th Cir. 1992). There, Amtrak employees sued *two* parties: their union *and* their employer. *Id.* at 820–21. We agreed with the district court that a state-law misrepresentation claim had to be dismissed under an *ordinary*-preemption rationale because it required "an interpretation" of a collective-bargaining agreement. *Id.* at 822 (analyzing Railway Labor Act preemption as a defense to a federal lawsuit).

Allied Pilots says that *Allen* fully answers the question here. We disagree for three reasons. The first is that it involved ordinary, not complete, preemption. *See Johnson*, 701 F.3d at 248 (discussing the differences between ordinary and complete preemption). As we noted in *Johnson*, ordinary preemption comes into play whenever "federal law . . . supersede[s] a state[-]law claim," whereas complete preemption is "quite rare" and occurs only when "federal preemption is *so* strong that 'there is . . . no such thing as a state-law claim.'" *Id.* (emphasis added) (quoting *Beneficial Nat'l Bank*, 539 U.S. at 11). So *Allen* never actually reached the issue presented in this case. *See Dukes v. U.S. Healthcare, Inc.*, 57 F.3d 350, 355 (3d Cir. 1995) (explaining that not "all claims preempted by ERISA are subject to removal"); *see also Markham*, 861 F.3d at 760 (stating that the defendants were "free to assert

a preemption defense in state court," even if their complete-preemption argument fell short).

The second and third reasons both have to do with the fact that the employees in *Allen* also sued Amtrak. Certain disputes between a *carrier* and its employees, as we have explained, go straight to an adjustment board. If we were to extend *Allen* here, it would be to a new factual context: a lawsuit solely between an employee and a union. And because no one in *Allen* thought that the union's involvement in the lawsuit might have mattered, it at most "implicit[ly] resol[ved]" the issue that we face: whether suits between unions and employees are completely preempted. *United States v. Bruguier*, 735 F.3d 754, 763 (8th Cir. 2013) (en banc) (quotation marks omitted); *see also Streu v. Dormire*, 557 F.3d 960, 964 (8th Cir. 2009) (holding that later panels are not bound by the "implicit resolution of an issue that was neither raised by the parties nor discussed by the [court]"). *Allen*, in other words, does not tie our hands.

Nor do the other cases cited by Allied Pilots. In the first, *Gore*, 210 F.3d 944, we said that complete preemption under the Railway Labor Act and the Labor Management Relations Act "are governed by . . . virtually identical" standards. *Id.* at 949 (quotation marks omitted). In the second, *Int'l Brotherhood of Elec. Workers v. Hechler*, 481 U.S. 851, 853–54, 861–62 (1987), the Supreme Court concluded that a tort dispute between a union and one of its members was completely preempted by the Labor Management Relations Act. These two cases, according to Allied Pilots, add up to complete preemption.

The math simply does not work, and text of the relevant statutes reveals why.[2] The Labor Management Relations Act authorizes "[s]uits for violation[s] of contracts between an employer and a labor organization representing employees . . .

---

[2]The standards for complete preemption under the Railway Labor Act and Labor Management Relations Act are "virtually identical," as we have said, but we still have to pay attention to the text to figure out *what* is completely preempted. *Gore*, 210 F.3d at 949 (quotation marks omitted).

or between any such labor organizations." 29 U.S.C. § 185(a). The word "between" modifies "contracts," not "suits," so the text only limits the subject of the suit, not *who* may sue. *Smith v. Evening News Ass'n*, 371 U.S. 195, 198 (1962); *see also Barnhart v. Thomas*, 540 U.S. 20, 26 (2003) (describing the grammatical rule of the last antecedent). This reading aligns with precedent, under which we have held that employees can sue their unions under the Labor Management Relations Act for breaching "contractual duties." *St. John v. Int'l Ass'n of Machinists & Aerospace Workers*, 139 F.3d 1214, 1218 n.2 (8th Cir. 1998).

Not so under the Railway Labor Act. The key language, as relevant here, covers "disputes between an employee or group of employees and a carrier or carriers." 45 U.S.C. § 153 First (i). This time, the word "between" modifies "disputes." *See Barnhart*, 540 U.S. at 26. The plain language sends disputes between certain parties—the *carrier* and its employees—to an adjustment board. *See Verville*, 520 F.2d at 618. The Railway Labor Act's party-focused language is precisely why complete preemption is lacking here. Although it creates a "cause of action" between employees and carriers, it has nothing comparable for disputes between employees and *unions*. *See Johnson*, 701 F.3d at 253 (explaining that there was no complete preemption because the relevant part of the statute had "*no language* creating a federal cause of action *which could substitute for Johnson's state[-]law claim*" (emphasis added)).

## C.

Allied Pilots has a backup complete-preemption theory. This one is based on the duty of fair representation, which protects union members from "arbitrary, discriminatory, or [] bad[-]faith" actions by a union. *Air Line Pilots Ass'n, Int'l v. O'Neill*, 499 U.S. 65, 67 (1991); *see also id.* at 73–77 (discussing this duty); *Steele v. Louisville & Nashville R.R. Co.*, 323 U.S. 192, 199–208 (1944) (establishing a cause of action for a breach of this duty). Krakowski's only option, according to Allied Pilots, was to sue for a breach of the duty of fair representation, not for conversion and unjust enrichment. Once again, we disagree.

Complete preemption does not come so easy. It is rare precisely because Congress must have *both* made the federal cause of action "exclusive" and "set forth procedures and remedies governing" it. *Johnson*, 701 F.3d at 248 (quoting *Beneficial Nat'l Bank*, 539 U.S. at 8). For the duty of fair representation, Congress did neither.

First, fair-representation claims are a "judicial creation," not an exclusive statutory remedy. *Wrobbel v. Asplundh Const. Corp.*, 549 F. Supp. 2d 868, 874–75 (E.D. Mich. 2008) (emphasis omitted); *see also Amalgamated Ass'n of St., Elec. Ry. & Motor Coach Emps. of Am. v. Lockridge*, 403 U.S. 274, 301 (1971) ("The duty of fair representation was judicially evolved . . . ."). To be sure, the Supreme Court has inferred that the duty exists based primarily on two Railway Labor Act provisions. *See Steele*, 323 U.S. at 199–202. One gives employees "the right to organize and bargain collectively through representatives of their own choosing" and empowers them "to determine who shall be the[ir] representative." 45 U.S.C. § 152 Fourth. The other requires "[a]ll disputes between a carrier or carriers and its or their employees [to] be considered, and, if possible, decided, with all expedition, in conference between representatives designated and authorized." 45 U.S.C. § 152 Second. But even if this is enough to imply a cause of action, Congress did not make it exclusive.[3]

Second, with an *implied* cause of action, it is unsurprising that there are no statutory "procedures and remedies." *Johnson*, 701 F.3d at 253. Unlike "disputes between" carriers and employees, fair-representation claims do not even have an "available administrative remedy" before an adjustment board. *Steele*, 323 U.S. at 205, 207 (quotation marks omitted); *see also Czosek v. O'Mara*, 397 U.S. 25, 27–28 (1970). Without specific "procedures and remedies," there can be no complete preemption. *Beneficial Nat'l Bank*, 539 U.S. at 8; *see Johnson*, 701 F.3d at 252–53.

---

[3]We have reached the same conclusion under the National Labor Relations Act. *See Markham*, 861 F.3d at 758–59.

## III.

We accordingly reverse, vacate the district court's judgment, and instruct the court on remand to return this case to state court.[4]

_____

_____

[4]Now that we have decided that remand to state court is necessary, there is no need to address the viability of the claims in Krakowski's amended complaint. *See In re Atlas Van Lines, Inc.*, 209 F.3d 1064, 1067 (8th Cir. 2000).