**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

LARRY C. MAYO; LESLIE CARROLL-
WICKS; MARY MAYS-CARROLL;
AVERY MILLIGAN; SANDRA PONOSKI,

> *Plaintiffs-Appellants,*

v.

BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY; VERJEANA M.
JACOBS; ASSOCIATION OF CLASSIFIED
EMPLOYEES/AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES,

> *Defendants-Appellees.*

No. 11-1816

LARRY C. MAYO; LESLIE CARROLL-
WICKS; MARY MAYS-CARROLL;
AVERY MILLIGAN; SANDRA PONOSKI,

> *Plaintiffs-Appellants,*

v.

BOARD OF EDUCATION OF PRINCE
GEORGE'S COUNTY; VERJEANA M.
JACOBS; ASSOCIATION OF CLASSIFIED
EMPLOYEES/AMERICAN
FEDERATION OF STATE, COUNTY AND
MUNICIPAL EMPLOYEES,

> *Defendants-Appellees.*

No. 11-2037

Appeals from the United States District Court
for the District of Maryland, at Greenbelt.
J. Frederick Motz, Senior District Judge.
(8:11-cv-01052-JFM)

Argued: January 31, 2013

Decided: April 11, 2013

Before NIEMEYER, GREGORY, and DAVIS,
Circuit Judges.

---

Affirmed by published opinion. Judge Niemeyer wrote the opinion, in which Judge Gregory and Judge Davis joined.

---

## COUNSEL

**ARGUED:** Richard Talbot Seymour, LAW OFFICES OF RICHARD T. SEYMOUR, PLLC, Washington, D.C., for Appellants. Abbey G. Hairston, THATCHER LAW FIRM, Greenbelt, Maryland; Mark James Murphy, MOONEY, GREEN, SAINDON, MURPHY & WELCH, PC, Washington, D.C., for Appellees. **ON BRIEF:** Nicholas W. Woodfield, R. Scott Oswald, THE EMPLOYMENT LAW GROUP, P.C., Washington, D.C.; Jay P. Holland, Timothy F. Maloney, Brian J. Markovitz, JOSEPH, GREENWALD & LAAKE, P.A., Greenbelt, Maryland, for Appellants. Natalie R. Bedard, MOONEY, GREEN, SAINDON, MURPHY & WELCH, PC, Washington, D.C., for Appellee Association of Classified Employees/American Federation of State, County and Municipal Employees; Sarah M. Burton, THATCHER LAW FIRM, Greenbelt, Maryland, for Appellees Board of Education of Prince George's County and Verjeana M. Jacobs.

---

**OPINION**

NIEMEYER, Circuit Judge:

Five current or former temporary employees (the "Temporary Employees") of the Board of Education of Prince George's County, Maryland ("School Board") filed a class action complaint in the Circuit Court for Prince George's County, asserting employee-compensation claims against the School Board, its chair, and the Association of Classified Employees/American Federation of State, County and Municipal Employees, AFL-CIO, Local 2250 (the "Union"). They alleged that even though the collective bargaining agreement ("CBA") excluded "temporary employees" from the bargaining unit, they were entitled to the benefits of an arbitration award entered as the result of an arbitration between the School Board and the Union, as well as benefits from the underlying CBA.

The School Board and its chair filed a notice of removal to federal court, which included a statement that the Union also agreed to the removal, and all defendants thereafter filed motions to dismiss for failure to state a claim. The Temporary Employees not only opposed the motions to dismiss but also filed a motion to remand, arguing that the removal was invalid because the Union did not timely file its own notice of removal or other paper giving its consent in writing. The district court denied the Temporary Employees' motion to remand and entered an order under Federal Rule of Civil Procedure 12(b)(6), dismissing the complaint for failure to state a claim. After filing a notice of appeal from the order of dismissal, the Temporary Employees also filed a motion in the district court for reconsideration of its dismissal order. The district court granted the defendants' motion to strike the motion for reconsideration. The Temporary Employees then filed a second notice of appeal from that order.

We affirm on both appeals, concluding (1) that the Union adequately consented to the notice of removal; (2) that the

Temporary Employees' complaint failed to state a claim for relief; and (3) that the district court did not err in striking the Temporary Employees' motion for reconsideration.

I

The School Board and the Union were parties to a CBA that covered "all employees of the Board who are contained within the bargaining unit represented by the Union" for the period July 1, 2007, through June 30, 2010. Article 2, § 1 of the CBA defined the bargaining unit to include "all classified employees of Prince George's County Public Schools with the exception[ ] of" certain employees, including "[t]emporary employees." And to protect the work positions for members of the bargaining unit, Article 7, § 17 of the CBA provided:

> A substitute or temporary employee will not be used to fill an authorized position in excess of sixty (60) working days except (1) when a qualified individual is not available to fill a position on a permanent basis or (2) where necessary to hold a position for a person on an approved leave of absence or (3) to preserve a vacancy for an employee currently assigned to a position scheduled to be eliminated (e.g., school closings, budget reductions, reorganization).

During wage-related negotiations in July 2008, the School Board provided the Union, at the Union's request, with a list identifying the substitute and temporary employees in the School Board's employ and giving information about them. The list included 2,180 such employees, many of whom had been employed by the School Board in the same position for more than 60 days and were performing the same duties as permanent classified employees who, as members of the bargaining unit, received higher pay and benefits. After receiving this information, the Union filed a grievance against the School Board, contending that the School Board's practice of hiring substitute and temporary employees violated Article 7,

§ 17 of the CBA. The grievance thereafter proceeded to arbitration.

In a decision dated July 8, 2009, the arbitrator concluded that the School Board had indeed violated the CBA by "employ[ing] substitute and temporary employees to fill what would be permanent positions but for the failure of the Board to establish those positions pursuant to the terms of the Agreement, and to seek their funding as [full-time equivalent employees] through the budgeting process." The arbitrator found that Article 7, § 17 "specifically was negotiated as a limitation on the ability of the Board to employ substitute and temporary employees to perform bargaining unit work" and that "the issue is the preservation of bargaining unit work for bargaining unit personnel, not the identity of the specific substitute or temporary employee who may be filling a position at any particular time." Although the arbitrator concluded that the Board had violated Article 7, § 17, he acknowledged that the scope of the violation was unclear. Accordingly, he instructed the parties to identify "[t]hose positions filled for in excess of 60 days by substitute and temporary employees that comprise duties covered by existing bargaining unit classifications," clarifying that "those that amount to bargaining unit positions are covered by this Award, and those that do not, are not."

The arbitrator tailored relief to three relevant periods of time. He determined that "[n]o remedy [was] warranted for the period of the violation occurring prior to the filing of the grievance," because "the Union's long silence" would make any remedy "grossly unfair and inequitable." For the period going forward, however, the arbitrator directed that the School Board cease its practice of "circumvent[ing] the terms of the Agreement by using substitute or temporary employees" to do work that should have been performed by "classified position[s]," emphasizing that "this ruling is tied not to the individual being employed on a substitute or temporary basis, but rather is tied to the position that is being filled by

a substitute or temporary employee, whomever the individual happens to be." Finally, for the period between the Union's filing of the grievance and the School Board's compliance with the award, the arbitrator concluded that "it would be inappropriate to order the conversion to permanent status of those substitute and temporary employees who ultimately are found . . . to have filled what should have been permanent classified positions." The arbitrator explained that there was no evidence that the School Board and the Union had discussed the "automatic conversion of substitute and temporary employees under such circumstances" and that, in the absence of such evidence, ordering such a conversion would be inappropriate given "the numerous important questions, unanswered on this record, that normally are addressed upon the hiring of an individual into a permanent position." Subject to the "proviso that retroactive conversion of the incumbents . . . is not warranted," the arbitrator "return[ed] to the parties for settlement in the first instance, along with several other unresolved remedial questions, the question of appropriate remedy for the period of time between the filing of the grievance and the Board's compliance with this Award."

As directed by the arbitrator, the Union and the School Board reached a settlement regarding the issues committed to them and reduced the settlement to a memorandum of understanding dated May 13, 2010. Under the settlement, the School Board agreed to pay the Union just over $1 million as "backpay amounts." The School Board also agreed to hire a minimum number of additional full-time bargaining unit employees by specified targeted dates.

On March 11, 2011, five current or former temporary employees of the School Board—Larry Mayo, Leslie Carroll-Wicks, Mary Mays-Carroll, Sandra Ponoski, and Avery Milligan—filed a class action complaint in the Circuit Court for Prince George's County, Maryland, naming as defendants the School Board, Verjeana Jacobs (in her capacity as Chair of the School Board), and the Union. They purported to repre-

sent a class defined as "[a]ll present and former Temporary Employees of the Board and its Chair performing duties covered by a CBA bargaining unit classification . . . for in excess of 60 days." In Count I, the Temporary Employees sought a declaratory judgment "that the Arbitration Award is valid and enforceable" by members of the class; that they had become permanent employees after 60 days of employment; and that they were therefore entitled to damages. In Count II, they alleged that the Union had "breached its duty of fair representation by fraudulently misleading the Plaintiffs and the Temporary Employees about the July 8, 2009 arbitration decision and award in their favor and instead accepting a payoff from the Board to resolve the Plaintiffs' and Temporary Employees' rights." In Count III, they alleged a breach of contract by the School Board, claiming that "Plaintiffs are third-party beneficiaries under the CBA and were not paid the compensation and benefits of full time employees that the CBA mandates." And finally, in Count IV, they alleged a Takings Clause violation against the School Board and its chair, under 42 U.S.C. § 1983.

The School Board and its chair filed a notice of removal, pursuant to 28 U.S.C. § 1441, in which they stated that the Union had been consulted and had "agree[d] with the removal of this action to federal court." Three days later, counsel for the Union entered his appearance in the district court, and yet another three days later, on April 28, 2011, the Union filed a motion to dismiss the complaint for failure to state a claim. In its accompanying memorandum of law, the Union noted that it had been served with process "[o]n or about March 26, 2011" and that it had consented to the notice of removal. The School Board and its chair also filed a motion to dismiss. The Temporary Employees opposed the motions to dismiss and also filed a motion to remand the case on the ground that the Union had not timely filed its own notice of removal or other writing reflecting its consent to the removal.

In an order dated July 19, 2011, the district court denied the Temporary Employees' motion to remand and granted the

defendants' motions to dismiss the complaint. On the remand motion, the court said that it had determined that removal was effective because of (1) Fourth Circuit precedent; (2) its assumption that "generally attorneys will act professionally"; and (3) Rule 11, which, the court noted, "provides a fully satisfactory deterrent to an attorney making a misrepresentation to the court as to whether a co-defendant has consented to removal." On the motions to dismiss, the court concluded that Count I appeared to be requesting an advisory opinion and that, in any event, the requested declaratory judgment was "absolutely inconsistent" with the arbitration decision. As to Count II, the court concluded that the Union did not owe the Temporary Employees a duty of fair representation; that the claim was in any event untimely; and that the plaintiffs did not exhaust their state administrative remedies. With respect to Count III, the court again concluded that, to the extent that the Temporary Employees could claim to be third-party beneficiaries of the CBA, their remedy was to seek state administrative relief. Finally, as to Count IV, the court concluded that state agencies, such as the School Board, are not "persons" within the meaning of 42 U.S.C. § 1983 and that the Eleventh Amendment bars damage claims against state agencies and officials.

The Temporary Employees promptly filed a notice of appeal from the district court's July 19, 2011 order. And several weeks later, on August 19, 2011, the Temporary Employees filed a motion in the district court, requesting reconsideration of the order dismissing their complaint. The School Board and its chair filed a motion to strike the Temporary Employees' motion for reconsideration, arguing that the motion was untimely and that, in any event, the court had been divested of jurisdiction by the Temporary Employees' earlier appeal. By order dated September 12, 2011, the district court granted the motion to strike, and the Temporary Employees filed a second notice of appeal from that order.

On appeal, the Temporary Employees contend (1) that the Union's consent to removal was inadequate to effect a

removal on its behalf; (2) that the district court erred in concluding that the Union did not owe the Temporary Employees a duty of fair representation and that they were not entitled to the benefits of the arbitration award; (3) that the district court erred in dismissing their claim for breach of the CBA based on a third-party beneficiary theory; and (4) that the district court abused its discretion in striking their motion for reconsideration of the dismissal order.

## II

In removing this case from state court to federal court under 28 U.S.C. § 1441(a), the School Board and its chair stated in the notice of removal that they had consulted with the Union and that the Union had consented to the removal. The Union, however, did not sign the notice of removal, nor did it timely file its own notice or a *written* consent to the School Board's notice. The Temporary Employees contend that the removal was defective and that the district court erred in refusing to remand this case to state court. They argue that all defendants must "join" in the notice of removal and that "joining" means to "support [it] in writing." Because the Union did not sign the notice of removal or timely sign a paper giving its own notice of removal or consent, they contend that the case was not properly removed.

The text of 28 U.S.C. § 1446 provides that to remove a case to federal court, "[a] defendant or defendants" (1) must file a notice of removal that includes a "short and plain statement of the grounds for removal, together with a copy of all [previously served] process, pleadings, and orders"; (2) must sign the removal pursuant to Federal Rule of Civil Procedure 11, which in turn provides that the notice must be "signed by at least one attorney of record in the attorney's name—or by a party personally if the party is unrepresented"; and (3) must file the notice within 30 days after receipt of the complaint through service of process. The applicable version of the statute does not address how a case involving multiple defendants

is to be removed or how the defendants must coordinate removal, if coordination is required.[1] Nonetheless, the Supreme Court has construed the statute to include a "unanimity requirement," such that all defendants must consent to removal. *See Lapides v. Bd. of Regents of Univ. Sys. of Ga.*, 535 U.S. 613, 620 (2002) (citing *Chicago, R.I. & P.R. Co. v. Martin*, 178 U.S. 245, 248 (1900), for the proposition that "removal requires the consent of all defendants"); *Wis. Dep't of Corrections v. Schacht*, 524 U.S. 381, 393 (1998) (Kennedy, J., concurring) ("Removal requires the consent of all of the defendants"). But neither the statute nor the Supreme Court's decisions have specified how defendants are to give their "consent" to removal.

Adopting a formal approach, the Seventh Circuit has stated that "[a] petition for removal is deficient if not all defendants join in it" and that, to do so, "all served defendants . . . have to support the petition in writing, i.e., sign it." *Gossmeyer v. McDonald*, 128 F.3d 481, 489 (7th Cir. 1997). Approving a less formal process—the procedure used by the defendants in this case—the Sixth Circuit has held that a notice of removal filed by three defendants which stated that the fourth defendant concurred in the removal satisfied the rule of unanimity. *See Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 201-02 (6th Cir. 2004). The Ninth Circuit has adopted the Sixth Circuit rule. *See Proctor v. Vishay Intertechnology Inc.*, 584 F.3d 1208, 1225 (9th Cir. 2009) (concluding that "[o]ne defendant's timely removal notice containing an averment of the other defendants' consent and signed by an attorney of record is sufficient"). And other courts of appeals have taken hybrid

---

[1]The current version of 28 U.S.C. § 1446, not applicable to the case at hand, provides, "When a civil action is removed solely under section 1441(a), all defendants who have been properly joined and served must join in or consent to the removal of the action." 28 U.S.C. § 1446(b)(2)(A). Although the statute now explicitly requires consent, it still does not indicate the form of that consent, and our analysis in this opinion would be unchanged were we to have before us the current version of the statute.

positions. *See Getty Oil Corp. v. Ins. Co. of N. Am.*, 841 F.2d 1254, 1262 n.11 (5th Cir. 1988) (concluding that while each defendant need not sign the notice of removal, there must be at least "some timely filed written indication from each served defendant . . . that it has actually consented to such action"); *Pritchett v. Cottrell, Inc.*, 512 F.3d 1057, 1062 (8th Cir. 2008) (applying the Fifth Circuit's rule in *Getty Oil*).

We have not addressed this precise question. In *Darcangelo v. Verizon Communications, Inc.*, 292 F.3d 181, 187 n.2 (4th Cir. 2002), we noted that a defendant's notice of removal "was filed with [the other defendant's] consent," but we did not state how the other defendant expressed its consent.

The relevant procedure for removal, set forth in § 1446, requires rather simply that "[a] defendant or defendants desiring to remove any civil action . . . shall file . . . a notice of removal signed pursuant to Rule 11." 28 U.S.C. § 1446(a). And Rule 11 in turn provides, "Every . . . paper must be signed by at least one attorney of record . . . ." These texts do not make clear how a case involving multiple defendants is to be removed in light of the requirement that all defendants must consent to the removal. While § 1446 does include the plural "defendants" in the subject, it requires only "a notice" of removal. The plural use of "defendants" is apparently included to accommodate the situation where more than one defendant "*desire*" to remove, without recognizing the required interplay among defendants in light of the originally court-made rule that all defendants *must* consent to removal.

To be sure, § 1446 requires at least one notice of removal *signed* by at least one attorney, in accordance with Rule 11, thus mandating that at least one attorney for the removing defendant or defendants be accountable to the court by representing, as provided in Rule 11, that removal is warranted by law and is not pursued for an improper purpose and that the facts alleged are justified or supported. *See* Fed. R. Civ. P. 11(b). Thus, the texts do indeed require the formality of *filing*

*a paper* that is *signed* and that *represents* the *bona fides* of the removal. They do not, however, require that in a case involving multiple defendants where all defendants must consent to removal that each of the defendants sign the notice of removal or file a separate notice of removal complying with § 1446(b).

Moreover, we can see no policy reason why removal in a multiple-defendant case cannot be accomplished by the filing of one paper signed by at least one attorney, representing that all defendants have consented to the removal. It is true that such a procedure does not include the signature of an attorney representing each defendant. But that does not suggest that the nonsigning attorneys for the defendants lack accountability to the court when they will be before the court within days of the removal, signing papers and otherwise performing as officers of the court. Indeed, in this case, the Union did file papers early on, signed by its attorney, indicating that it had consented to the removal.[2] The practice of having one attorney represent to the court the position of other parties in the case, with the intent that the court act on such representation, is quite common. The courts often receive motions representing that the opposing party consents to the motion, and courts have not traditionally required the other party to file a separate paper confirming that consent. Were there to be a misrepresentation by an attorney signing a paper, falsely stating that another defendant consented to removal, the other defendant "would [no doubt] have brought this misrepresentation to the court's attention and it would have been within the district court's power to impose appropriate sanctions, including a remand to state court." *Harper*, 392 F.3d at 202. And those "appropriate sanctions" would surely include the sanctions authorized by Rule 11, which are explicitly available when an attorney misrepresents the evidentiary basis for a "factual contention." *See* Fed. R. Civ. P. 11(b)-(c).

---

[2]Because the Union's written indication of consent was filed more than 30 days after its receipt of the complaint by process, that written indication, the Temporary Employees say, cannot be advanced to satisfy the time requirement for removal.

Accordingly, we conclude that a notice of removal signed and filed by an attorney for one defendant representing unambiguously that the other defendants consent to the removal satisfies the requirement of unanimous consent for purposes of removal. Because the Union adequately consented to the removal filed by the School Board and its chair, we conclude that the removal was effective in this case and that the district court did not err in declining to remand the case to state court.

## III

In Count II of their complaint, the Temporary Employees purported to allege that the Union breached a duty of fair representation owed to them. They alleged that the Union did so "by fraudulently misleading [them] about the July 8, 2009 arbitration decision and award in their favor and instead accepting a payoff from the Board to resolve [their] rights." More fully, they asserted that the Union mislead them by "failing to inform [them] . . . [1] that the Union had secured an arbitration award against the Board *declaring them to be permanent employees* under the CBA and [2] that *they were entitled to an award of retroactive compensation and benefits* consistent with their rights under the CBA." (Emphasis added). And they asserted that instead of informing them and looking after their interests, "[t]he Board and the Union surreptitiously agreed to disregard the rights and interests of the Plaintiffs . . . in exchange for the payment of monies paid by the Board . . . to the Union."

The district court dismissed this count under Rule 12(b)(6) for failure to state a claim, and we review that order de novo to determine whether the claim they purport to assert was "plausible on its face." *Francis v. Giacomelli*, 588 F.3d 186, 190 (4th Cir. 2009) (quoting *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007)).

It is well to note at the outset that the Temporary Employees were not members of the Union and were expressly

excluded from the bargaining unit under the CBA. Moreover, the Temporary Employees were not parties to the arbitration action between the Union and the School Board. Nonetheless, the Temporary Employees allege that they were owed a duty of fair representation under Maryland law, citing Md. Code Ann., Educ. § 6-501(d), (g)(1). We do not need to reach whether the Union owed the Temporary Employees this duty because their theory of how the Union breached this duty is based on isolated statements in the arbitrator's decision, which were taken out of context. As a consequence, their claim is based on a complete misreading of the arbitrator's decision.

Contrary to the Temporary Employees' assertion, the arbitrator did not declare them to be permanent employees. He stated explicitly that "based on the record as a whole, the arbitrator concludes that it would be *inappropriate to order the conversion* to permanent status of those substitute and temporary employees who are ultimately found . . . to have filled what should have been permanent classified positions." The arbitrator repeatedly explained that "the issue is the *preservation of bargaining unit work for bargaining unit personnel*, not the identity of the specific substitute or temporary employee who may be filling a position at any particular time." Thus, the arbitrator grounded his ruling on the purpose of preserving work provided by specific positions for members of the bargaining unit. There is simply no support for the Temporary Employees' assertion that the arbitrator declared them to be permanent employees.

Similarly, the arbitrator did not conclude that the Temporary Employees were entitled to retroactive compensation and benefits, as they claim. In granting relief, the arbitrator made three relevant rulings. First, he concluded that "[n]o remedy is warranted for the period of the violation occurring prior to the filing of the grievance." Second, he concluded that for the period after the award, the School Board must cease using substitute or temporary employees to do work that should

have been done by bargaining unit personnel, emphasizing that "this ruling is tied not to the individual being employed on a substitute or temporary basis, but rather is tied *to the position* that is being filled by a substitute or temporary employee, whomever the individual happens to be." (Emphasis added). And third, he concluded that for the period between the Union's filing of the grievance and the School Board's compliance with the award, "the best course is to return to the parties for settlement in the first instance . . . subject to the foregoing proviso that *retroactive conversion of the incumbents of such positions is not warranted.*" (Emphasis added). There is simply no language that can be read to provide relief to the Temporary Employees.

Accordingly, we affirm the district court's order dismissing Count II because the Temporary Employees' theory of breach is based on fundamental misreading of the arbitrator's decision and therefore is implausible.

IV

In Count III, the Temporary Employees purport to allege a breach of contract claim against the School Board, asserting that they were "third party beneficiaries under the CBA and were not paid the compensation and benefits of full time employees that the CBA mandates, and thus they suffered damages."

Again, we note that the Temporary Employees were not members of the bargaining unit under the CBA, nor were they parties to the CBA. And to be third-party beneficiaries of the CBA, they would have to demonstrate that the School Board and the Union intended them to be entitled to a benefit under the CBA. *See Astra USA, Inc. v. Santa Clara Cnty., Cal.*, 131 S. Ct. 1342, 1347 (2011) ("A nonparty becomes legally entitled to a benefit promised in a contract . . . only if the contracting parties so intend").

But far from evincing such an intent, the CBA explicitly excludes the Temporary Employees from its coverage. The agreement states that it is between the School Board and the Union and that "[t]he term 'employees,' when used in this agreement, shall hereinafter refer to all employees of the Board who are contained within the bargaining unit represented by the Union." The bargaining unit is then defined as "all classified employees of Prince George's County Public Schools *with the exception[ ] of . . . [t]emporary employees*." (Emphasis added). It is true that the agreement does limit the use of substitute or temporary employees to fill authorized positions, but it does so to protect those positions for members of the bargaining unit. We find no textual indication or suggestion that the Temporary Employees were intended beneficiaries of the CBA.

Perhaps recognizing the lack of textual support for their third-party beneficiary claim, the Temporary Employees argue further that the "facts support their claims that they are intended third-party beneficiaries." But the only facts they rely on are (1) that the Union's grievance was intended to benefit Temporary Employees and (2) that "the Arbitrator's Award clearly finds that employees who fill an 'authorized position' are working in bargaining unit positions and were intended to benefit from the arbitration award." These facts, however, were not established, and the Union's grievance was not a part of the record. In his decision, the arbitrator summarized the Union's grievance as "seek[ing] a ruling that the Board has employed substitute or temporary employees in violation of . . . the [CBA] . . . *by allowing non-bargaining unit employees to perform work reserved to bargaining unit employees*." (Emphasis added). And the Temporary Employees' argument that the arbitrator's award independently shows that they are intended beneficiaries of the CBA is also not supported. The arbitrator emphasized that his ruling was based on the CBA's *protection of work for the bargaining unit*, concluding that the provision on the use of Temporary Employees "was negotiated as a limitation on the ability of

the Board to employ substitute and temporary employees to perform bargaining unit work in lieu of establishing and filling permanent classified positions with bargaining unit employees."

Because we find no support for the Temporary Employees' claim that they were third-party beneficiaries of the CBA, we likewise affirm the district court's order dismissing Count III for failure to state a plausible claim for relief.

V

Finally, the Temporary Employees contend that the District Court abused its discretion in striking their motion for reconsideration of the court's order dismissing the complaint.

In their motion for reconsideration, the Temporary Employees recognized that their motion was untimely but requested that the court "waive the 14-day time period [as provided by local rules] under the circumstances." Relying on a new fact, they also reargued a position that they originally took in opposition to the motion to dismiss and that the district court had previously addressed. The defendants filed a motion to strike the Temporary Employees' motion, arguing that the Temporary Employees' motion was untimely and that the district court lacked subject matter jurisdiction in view of the fact that the Temporary Employees had already appealed the dismissal order. The district court granted the motion to strike without explanation.

In these circumstances we conclude that the district court did not abuse its discretion. To be sure, if the Temporary Employees' motion was to be taken as a Rule 59(e) motion, it was filed beyond the 28-day period given for the filing of Rule 59(e) motions. But more importantly, they advanced no new argument that would require the district court to alter or amend its judgment under Rule 59(e), or even under Rule 60(b). In the end, the position they took was considered by the

district court and preserved for appeal, although we did not find it necessary to address the point because we concluded that the Temporary Employees' complaint failed to state plausible claims.

\* \* \*

In sum, we conclude that the School Board properly removed this case to federal court; that neither substantive claim asserted by the Temporary Employees stated a plausible claim for which relief could be granted; and that the district court did not err in striking the Temporary Employees' motion for reconsideration. The judgment is accordingly

*AFFIRMED*.