# United States Court of Appeals
## For the Eighth Circuit

———————————————

No. 13-3170

———————————————

Mark Griffioen, individually and on behalf of all others similarly situated; Joyce Ludvicek, individually and on behalf of all others similarly situated; Mike Ludvicek, individually and on behalf of all others similarly situated; Sandra Skelton, individually and on behalf of all others similarly situated; Brian Vanous, individually and on behalf of all others similarly situated

*Plaintiffs - Appellants*

v.

Cedar Rapids and Iowa City Railway Company; Alliant Energy Corporation; Union Pacific Railroad Company; Union Pacific Corporation; Hawkeye Land Co.; Hawkeye Land II Co.; Hawkeye Land NFG, Inc.; Stickle Enterprises, Ltd.; Midwestern Trading, Inc.; Midwest Third Party Logistics, Inc., also known as Midwest 3PL; Stickle Grain Co.; Stickle Warehousing, Inc.; Rick Stickle; Marsha Stickle

*Defendants - Appellees*

———————————

Appeal from United States District Court
for the Northern District of Iowa - Cedar Rapids

———————————

Submitted: October 7, 2014
Filed: May 7, 2015

———————————

Before RILEY, Chief Judge, WOLLMAN and BYE, Circuit Judges.

———————————

WOLLMAN, Circuit Judge.

Mark Griffioen, Joyce and Mike Ludvicek, Sandra Skelton, and Brian Vanous (collectively, the Griffioen Group) filed an action seeking recovery for property damage that occurred during the June 2008 flooding of the Cedar River. They now appeal from the district court's order and judgment denying their motion to remand the action to state court, granting the motion for judgment on the pleadings filed by Union Pacific Railway Company and Union Pacific Corporation (collectively, Union Pacific), and dismissing the claims against all defendant-appellees (collectively, the Rail Group). We vacate the order and judgment and remand for the action to be remanded to state court.

I.

The Griffioen Group brought a putative class action in Iowa state court against Union Pacific, Cedar Rapids and Iowa City Railway Co. and Alliant Energy Corp. (collectively, CRANDIC), and ten additional defendants (collectively, the Stickle Defendants),[1] alleging negligence, strict liability for abnormally dangerous or ultra-hazardous activity, and strict liability based on violations of Iowa Code sections 468.148 and 327F.2. They allege that the Rail Group's failure to properly build and maintain railway bridges over the Cedar River caused or exacerbated the 2008 flood. They also allege that the decision of some members of the Rail Group to attempt to stabilize the bridges by weighing them down with railcars filled with ballast caused or exacerbated the flooding of their properties, either because the bridges collapsed and effectively dammed the river and blocked drainage, or because the railcars on bridges that did not collapse blocked the free flow of the river and diverted water into low-lying areas.

---

[1]The Stickle Defendants include Hawkeye Land Co.; Hawkeye Land II Co.; Hawkeye Land NFG, Inc.; Stickle Enterprises, Ltd.; Midwestern Trading, Inc.; Midwest Third Party Logistics, Inc. aka Midwest 3PL; Stickle Grain Co.; Stickle Warehousing, Inc.; Rick Stickle; and Marsha Stickle.

CRANDIC was served with the complaint on June 7, 2013. The Stickle Defendants were served on June 8, 2013, and Union Pacific was served on June 10, 2013. On July 2, 2013, Union Pacific filed a Notice of Removal that asserted federal-question jurisdiction arising from the complete preemption created by the Federal Railway Safety Act (FRSA). The notice stated, "Undersigned counsel . . . have contacted attorneys for the other named co-defendants in this matter, and there is no objection to removal." Accompanying the affidavit was a local rule certification that stated, "The co-defendants have given their consent to the removal of this action." On July 10, 2013, CRANDIC filed its notice of consent to removal. The Stickle Defendants, however, did not file a notice of consent to removal until July 31, 2013—more than 30 days after Union Pacific was served with the complaint. By that time, the Griffioen Group had filed a motion to remand, arguing that the FRSA does not completely preempt their claims and that removal was improper because not all defendants had timely consented. CRANDIC, the Stickle Defendants, and Union Pacific all filed briefs in opposition to the motion to remand, arguing that removal was proper. The Stickle Defendants' brief in opposition stated that their counsel had told Union Pacific that they had "no objection to removal." In their briefs in opposition, the Rail Group abandoned the FRSA argument, contending instead that the Interstate Commerce Commission Termination Act (ICCTA), 49 U.S.C. §§ 701-727, 10101-16106, completely preempted the Griffioen Group's state-law claims, thereby giving the federal court jurisdiction. Union Pacific also filed a motion for judgment on the pleadings.

The district court granted Union Pacific's motion for judgment on the pleadings and denied the Griffioen Group's motion to remand, concluding that there was timely consent to removal and that the court had subject-matter jurisdiction because the ICCTA completely preempted the state-law claims. It ordered that the case be transferred to the Surface Transportation Board (STB), the agency tasked with administering the ICCTA.

II.

We first consider whether consent to removal was timely. Griffioen Group contends that the Stickle Defendants' consent was invalid and that under 28 U.S.C. § 1446, each co-defendant was required either to sign the notice of removal or to file for itself a written indication of its consent within 30 days of the date of service upon the removing defendant, neither of which the Stickle Defendants did.

The interpretation of § 1446 is a question of law that we review *de novo*. See Marano Enters. of Kan. v. Z-Teca Rests., L.P., 254 F.3d 753, 755 (8th Cir. 2001). The first paragraph of § 1446(b) requires that a defendant's notice of removal "be filed within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1). The second paragraph, as amended in 2011, requires that "all defendants who have been properly joined and served must join in or consent to the removal of the action" and that each defendant "shall have 30 days after receipt by or service on that defendant of the initial pleading or summons described in paragraph (1) to file the notice of removal." Id. § 1446(b)(2)(A)-(B).

The Supreme Court long ago established, under a predecessor removal statute, that removal based on a federal question requires the unanimous consent of all defendants. See Chi., Rock Island, & Pac. Ry. Co. v. Martin, 178 U.S. 245, 248 (1900). That rule persists to this day and has been codified in the 2011 amendments to § 1446. See Federal Courts Jurisdiction and Venue Clarification Act of 2011, Pub. L. 112-63, § 103, 125 Stat. 758, 760 (codified as amended at 28 U.S.C. § 1446). Because neither the Supreme Court nor Congress has clarified what form consent must take, however, the circuits have split on this issue. The Fourth, Sixth, and Ninth Circuits have held that a statement in one defendant's timely removal notice that its codefendants consent is sufficient. Mayo v. Bd. of Educ., 713 F.3d 735, 742 (4th Cir. 2013); Proctor v. Vishay Intertechnology Inc., 584 F.3d 1208, 1225 (9th Cir. 2009);

Harper v. AutoAlliance Int'l, Inc., 392 F.3d 195, 201-02 (6th Cir. 2004). The Seventh and Fifth Circuits, on the other hand, have suggested that in most situations a defendant may not give notice of consent on another defendant's behalf. See Roe v. O'Donohue, 38 F.3d 298, 301 (7th Cir. 1994), abrogated on other grounds by Murphy Bros. v. Michetti Pipe Stringing, Inc., 526 U.S. 344 (1999); Getty Oil Corp. v. Ins. Co. of N. Am., 841 F.2d 1254, 1262 n.11 (5th Cir. 1988) (allowing such consent only by the defendant itself or by another with authority to formally act on the defendant's behalf).

We have not directly addressed the question whether a representation in a removing defendant's notice stating that its codefendants consent can satisfy § 1446's unanimity requirement. In Pritchett v. Cottrell, Inc., we set forth the basic rule that in order to meet the consent requirement, there must "'be some timely filed written indication from each served defendant,' or from some person with authority to act on the defendant's behalf, indicating that the defendant 'has actually consented' to the removal." 512 F.3d 1057, 1062 (8th Cir. 2008) (quoting Getty Oil, 841 F.2d at 1262 n.11). Pritchett thus left open the possibility that the unanimity requirement could be met when the removing defendant gives notice of its codefendants' consent, presuming, of course, that the removing defendant has the authority to indicate consent on their behalf, and that its notice of removal is timely.[2]

It is true that we have specifically advised non-removing defendants who wish to consent to removal to "either sign the notice of removal or file a timely and

_____

[2]We disagree with the Fourth and Ninth Circuits' characterizations of Pritchett to the extent that they suggest otherwise. See Mayo, 713 F.3d at 741; Proctor, 584 F.3d at 1224-25. Pritchett quoted Getty Oil, but did not necessarily adopt the Fifth Circuit's rule in its entirety. At any rate, Getty Oil also left open the possibility that a defendant with proper authorization could consent on its codefendants' behalf; in Getty Oil, however, that authorization had not been established. See Getty Oil, 841 F.2d at 1262 n.11.

unequivocal consent." <u>Christiansen v. W. Branch Cmty. Sch. Dist.</u>, 674 F.3d 927, 933 (8th Cir. 2012). Nevertheless, we have recognized that the written indication of consent can come in various forms, and we have been "disinclined to apply the unanimity requirement in a 'hypertechnical and unrealistic manner.'" <u>Id.</u> (quoting <u>Bradley v. Md. Cas. Co.</u>, 382 F.2d 415, 419 (8th Cir. 1967)). So also here, we are once again disinclined to adopt a hard-line requirement, particularly in light of the new language of § 1446. The 2011 amendments to § 1446 that codified the rule of unanimity did not describe the form of or time frame for consent when multiple defendants are involved. By comparison, § 1446 as amended lays out in detail the procedures for the notice of removal, including the form of the notice and the time frame for each defendant to file it in a multiple-defendant action. Congress could have defined with equal specificity the form of or time for consent but chose not to do so. Its failure to do so dissuades us from adopting a rule that places form over substance.

Furthermore, we believe that policy considerations support the validity of the consent in the circumstances of this case. The potential for Rule 11 sanctions and a codefendant's opportunity to alert the court to any falsities in the removing defendant's notice serve as safeguards to prevent removing defendants from making false representations of unanimous consent and forcing codefendants into a federal forum against their will. <u>See</u> <u>Mayo</u>, 713 F.3d at 742 (explaining that codefendants can bring misrepresentations to the court's attention, leading to Rule 11 sanctions); <u>Proctor</u>, 584 F.3d at 1225 (stating that the availability of sanctions and objection mitigate policy concerns); <u>see also</u> <u>Esposito v. Home Depot U.S.A., Inc.</u>, 590 F.3d 72, 75 (1st Cir. 2009) (noting that the rule of unanimity prevents one defendant from imposing its choice of forum on unwilling codefendants). And although there may be instances in which these safeguards alone are not sufficient, as long as the removing defendant's codefendant itself later files an indication of its consent, any potential concern that the codefendant has not authorized or manifested its binding consent to removal is mitigated. The Stickle Defendants did so here.

The Griffioen Group argues that the words "no objection to removal" are insufficient to indicate actual consent. See, e.g., Frankston v. Denniston, 376 F. Supp. 2d 35, 41 (D. Mass. 2005) ("[A] failure to object is different than affirmatively giving consent."). The local rule certification accompanying Union Pacific's notice of removal, however, stated that "[t]he co-defendants have given their consent to the removal of this action." If there is a difference between "no objection" and consent, the local rule certification—also subject to Rule 11—resolved the issue. And even if the Stickle Defendants' statement to Union Pacific that they had "no objection" would be insufficient to support Union Pacific's authority to represent their "consent," they later ratified Union Pacific's notice of consent on their behalf. See Gillis v. Louisiana, 294 F.3d 755, 759 (5th Cir. 2002) (finding a notice of consent valid, despite not being properly authorized at the time, when the defendant ratified it after the fact).

We therefore hold that a defendant's timely removal notice indicating consent on behalf of a codefendant, signed and certified pursuant to Rule 11 and followed by the filing of a notice of consent from the codefendant itself, sufficiently establishes that codefendant's consent to removal. Thus, the Stickle Defendants' consent in this case was sufficient.

III.

We next address whether there is federal-question jurisdiction under the doctrine of complete preemption.

The Rail Group seeks to remove the Griffioen Group's claims to federal court under 28 U.S.C. § 1441(a), which allows defendants to remove "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." District courts have original jurisdiction over "civil actions arising under the Constitution, laws, or treaties of the United States," *i.e.*, "federal question" cases. 28 U.S.C. § 1331.

The existence of a federal question is an issue of law that we review *de novo*. Gaming Corp. of Am. v. Dorsey & Whitney, 88 F.3d 536, 542 (8th Cir. 1996). The general rule—known as the "well-pleaded complaint rule"—is that a complaint must state on its face a federal cause of action in order for the action to be removable on the basis of federal-question jurisdiction. Id. (citing Caterpillar Inc. v. Williams, 482 U.S. 386, 392 (1987)). Typically, the existence of a federal defense, including a defense of preemption (hereinafter "ordinary preemption"), does not create federal-question jurisdiction. Aetna Health Inc. v. Davila, 542 U.S. 200, 207 (2004); Johnson v. MFA Petroleum Co., 701 F.3d 243, 247 (8th Cir. 2012). Under an exception or corollary to the well-pleaded complaint rule, however, a state-law claim may be removed to federal court when a federal statute "wholly displaces" the state-law cause of action, resulting in "complete preemption." Davila, 542 U.S. at 207-08; Beneficial Nat'l Bank v. Anderson, 539 U.S. 1, 8 (2003). This is so because when a federal statute completely preempts a state-law cause of action, the state-law claim "is properly 'recharacterized' as a complaint arising under federal law." See Hull v. Fallon, 188 F.3d 939, 942 (8th Cir. 1999) (quoting Rice v. Panchal, 65 F.3d 637, 640 n.2 (7th Cir. 1995)).

Complete preemption is rare and occurs only when a federal statute has extraordinary preemptive power. See MFA Petroleum, 701 F.3d at 247-48 (citing Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 65 (1987)). Under the complete preemption doctrine, a claim, despite a plaintiff's attempt to plead it in terms of state law, "is in reality based on" and "arises under" federal law. Beneficial Nat'l Bank, 539 U.S. at 8. "A conclusion that there is complete preemption effectively maintains that 'the plaintiff has simply brought a mislabeled federal claim, which may be asserted under some federal statute.'" MFA Petroleum, 701 F.3d at 247 (quoting King v. Marriott Int'l Inc., 337 F.3d 421, 425 (4th Cir. 2003)).

The "'ultimate touchstone' guiding preemption analysis" is congressional intent. Gaming Corp., 88 F.3d at 544 (quoting Pilot Life Ins. Co. v. Dedeaux, 481

U.S. 41, 45 (1987)).  A state-law claim is completely preempted when Congress intended that the federal statute provide the exclusive cause of action for the asserted claim.  See Beneficial Nat'l Bank, 539 U.S. at 8-9, 11.  Since "[t]he lack of a substitute federal [cause of] action would make it doubtful that Congress intended" the federal statute to provide the exclusive cause of action, "without a federal cause of action which in effect replaces a state law claim, there is an exceptionally strong presumption against complete preemption."  MFA Petroleum, 701 F.3d at 252.

The ICCTA contains an express preemption provision, which states, in pertinent part:

> (b) The jurisdiction of the [STB] over—
>
> > (1) transportation by rail carriers, and the remedies provided in this part with respect to rates, classifications, rules (including car service, interchange, and other operating rules), practices, routes, services, and facilities of such carriers; and
> >
> > (2) the construction, acquisition, operation, abandonment, or discontinuance of spur, industrial, team, switching, or side tracks, or facilities, even if the tracks are located, or intended to be located, entirely in one State,
>
> is exclusive.  Except as otherwise provided in this part, the remedies provided under this part with respect to regulation of rail transportation are exclusive and preempt the remedies provided under Federal or State law.

49 U.S.C. § 10501(b).

The foregoing provision reflects a clear indication of Congress's preemptive intent with respect to the matters set forth therein.  It expressly provides for preemption of state remedies.  It also grants the STB exclusive jurisdiction, using

language that is even more powerful than that found in other jurisdictional provisions that the Supreme Court has held support complete preemption. Cf. Metro. Life Ins., 481 U.S. at 65 (analyzing Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1132(f)); Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists & Aerospace Workers, 390 U.S. 557, 559-62 (1968) (analyzing Labor Management Relations Act, 29 U.S.C. § 185). This language may be powerful enough to suggest that Congress intended that the ICCTA completely preempt certain state-law claims. See Fayard v. Ne. Vehicle Servs., LLC, 533 F.3d 42, 46 (1st Cir. 2008) ("[T]he ICCTA uses language that could support complete preemption in an appropriate case."); PCI Transp., Inc. v. Fort Worth & W. R.R. Co., 418 F.3d 535, 544 (5th Cir. 2005) (holding that the plain language of § 10501 supports complete preemption of some claims).

The purposes and legislative history of the ICCTA also suggest that Congress may have intended complete preemption of certain state-law claims. See Deford v. Soo Line R.R. Co., 867 F.2d 1080, 1086 (8th Cir. 1989) (noting that courts may look to the purposes and history of a statute to determine Congress's preemptive intent). For example, a House Report highlights the need for uniform federal regulation of railroads and states that "changes are made to reflect the direct and complete pre-emption of State economic regulation of railroads." H.R. Rep. No. 104–311, at 95-96 (1995).

Assuming that Congress intended complete preemption of certain claims, however, there remains the crucial question whether the claims in this action fall within the scope of the ICCTA's complete preemption. The Rail Group focuses their arguments on the broad language of the ICCTA's preemption provision, 49 U.S.C. § 10501(b). But these arguments conflate complete and ordinary preemption. The ICCTA's express preemption provision may be a key factor in determining the extent of the statute's ordinary preemption, cf. St. Louis Effort for AIDS v. Huff, No. 14-1520, slip op. at 6-7, 2015 WL 1600472, at *3 (8th Cir. Apr. 10, 2015) (applying an

express preemption clause to determine the scope of ordinary preemption under the Affordable Care Act), as well as Congress's intent to completely preempt some claims, but it does not address removal or explicitly provide for federal-question jurisdiction over all preempted state-law claims. Complete and ordinary preemption are not necessarily coextensive. See, e.g., Conn. State Dental Ass'n v. Anthem Health Plans, Inc., 591 F.3d 1337, 1344 (11th Cir. 2009). The scope of complete preemption turns primarily on the provision creating the federal cause of action—not on an express preemption provision. It is the federal cause of action that ultimately supplants the state-law cause of action and effectuates complete preemption. See, e.g., Davila, 542 U.S. at 221 (concluding that state-law causes of action are completely preempted by ERISA § 502(a)(1)(B)—a section setting forth a federal cause of action and enforcement mechanism). The exclusive, federal cause of action is "the hinge on which the door to the federal courthouse swings." Gil Seinfeld, The Puzzle of Complete Preemption, 155 U. Pa. L. Rev. 537, 567 (2007). That is so because it is unlikely that Congress would have intended the ICCTA to allow removal of claims of a kind entirely outside the scope of the statute's causes of action. See MFA Petroleum, 701 F.3d at 252; cf. Metro. Life Ins., 481 U.S. at 66 (holding that a state-law action was preempted when it fell within the scope of ERISA's § 502(a) civil-enforcement provision); Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal., 463 U.S. 1, 24 (1983) ("[I]f a federal cause of action completely preempts a state cause of action[,] any complaint that comes within the scope of the federal cause of action necessarily 'arises under' federal law.").

Section 11704 of the ICCTA provides an administrative cause of action.[3] The Rail Group argues that the existence of this cause of action is sufficient for complete preemption. Under § 11704, persons who sustain damages as a result of a rail carrier's act or omission may file a complaint with the STB, which may award damages in an

_____

[3]For purposes of this appeal, we assume without deciding that such an administrative cause of action can trigger complete preemption.

-11-

appropriate case. 49 U.S.C. § 11704(b)-(c). The cause of action, however, is available only for "violation[s] of this part"—*i.e.*, violations of the ICCTA's substantive provisions or accompanying regulations. See id. § 11704(b). Section 11704 does not stand on its own, but must be coupled with a deprivation or violation of rights, duties, or obligations established by statute in the ICCTA or by regulations issued pursuant to the ICCTA. The scope of the ICCTA's cause of action is thus limited by the ambit of the statute's substantive rules.

Although the Rail Group claims that the ICCTA provides a substitute cause of action for the Griffioen Group's claims, they have not pointed to any substantive provision of the ICCTA or its accompanying regulations that protects interests or redresses wrongs similar to those asserted by the Griffioen Group. Our review of the statute and regulations has not revealed such a provision. The primary focus of the ICCTA's substantive provisions is regulation of competition, rates, licensing, finance, and the economic relationships between shippers and carriers. See id. § 10101 (stating the policy goals underlying the ICCTA); cf. Fayus Enters. v. BNSF Ry. Co., 602 F.3d 444, 451 (D.C. Cir. 2010) ("[T]he core of ICCTA preemption is 'economic regulation,' which we take to refer to regulation of the relationship before us here, that of shippers and carriers."). The Griffioen Group's allegations that the Rail Group's bridge maintenance and related conduct resulted in flooding of real property in Cedar Rapids does not fall within the scope of this substantive framework.

The only provision of the ICCTA that could arguably support complete preemption of these claims is § 10702, which requires that rail carriers "establish reasonable . . . rules and practices on matters related to . . . transportation or service." But as several other courts have noted, § 10702's scope may be limited by context. See Fayard, 533 F.3d at 47; Californians for Alternatives to Toxics v. N. Coast R.R. Auth., No. C-11-04102 JCS, 2012 WL 1610756, at *9 (N.D. Cal. May 8, 2012). The majority of cases involving violations of § 10702 concern challenges to tariffs and disputes between shippers and carriers. The Rail Group has not cited § 10702 as

-12-

supporting a substitute federal cause of action for the Griffioen Group's claims, and we have not found any STB or court precedent that would clearly support application of § 10702 to the types of claims at issue in this case.

The Rail Group correctly notes that a determination of complete preemption does not require that the plaintiff have an available federal remedy, since "the issue of whether there is a federal remedy is different from whether there is a federal cause of action." MFA Petroleum, 701 F.3d at 252. Complete preemption does not require "mirror-like symmetry between the federal and state remedies." Devon Energy Prod. Co., L.P. v. Mosaic Potash Carlsbad, Inc., 693 F.3d 1195, 1207 (10th Cir. 2012). But it is unlikely that Congress would intend to completely preempt state-law causes of action without providing a federal cause of action designed to vindicate similar rights and interests or to redress wrongs of a similar type. See id. ("[T]he federal remedy at issue must vindicate the same basic right or interest that would otherwise be vindicated under state law."); Fayard, 533 F.3d at 46 (noting that a common denominator in the Supreme Court's complete-preemption decisions is a federal cause of action "for wrongs of the same type"). Congress has the power to eliminate state-law remedies and causes of action without providing federal substitutes, but when it does so, the presumption is that preemption serves only as a defense, not as a basis for removal to federal court. See MFA Petroleum, 701 F.3d at 252-53.

Railroads are areas of "special federal interest," id. at 248, and we have held that several other federal railroad-related statutes, including the predecessor statute to the ICCTA, completely preempt certain state-law actions, see Peters v. Union Pac. R.R. Co., 80 F.3d 257, 262 (8th Cir. 1996) (FRSA); Deford, 867 F.2d at 1085-86 (Railway Labor Act (RLA) and Interstate Commerce Act (ICA)). Nothing in those cases, however, suggests that the need for national uniformity in railroad regulation is so powerful that it allows removal of state-law claims that fall completely outside the substantive scope of the federal regulatory scheme. In Deford, in which railroad employees adversely affected by the sale of rail lines challenged the transaction, we

specifically noted that the RLA provided "administrative grievance procedures and remedies" for the labor dispute at issue. 867 F.2d at 1085. Furthermore, in Deford we focused on the fact that the ICA gave the Interstate Commerce Commission—the predecessor to the STB—the power to condition its approval of the sale on fairness to adversely affected railroad employees. Id. at 1089. Thus, "[t]he ICA provide[d] both a forum and a set of remedies" designed to address interests similar to those of the plaintiffs. Id. at 1091. Similarly, in Peters, in which a railroad employee challenged his employer's withholding of his engineer certification, we noted that the FRSA and the related regulations included a "comprehensive remedial scheme" and specific, detailed procedures for disputing a railroad's denial of engineer certification. 80 F.3d at 261. Thus, even though the alternative federal remedies in Deford and Peters were administrative, we held that there was complete preemption because the subject matter of the plaintiffs' claims fell within the scope of the respective statutes' substantive regulatory frameworks and substitute remedial schemes. Here, that is not the case.

The absence from the ICCTA of a substitute federal cause of action that would embrace the Griffioen Group's claims leads us to conclude that Congress has not expressed the clear intent necessary to overcome the exceptionally strong presumption against complete preemption, as set forth in MFA Petroleum, 701 F.3d at 252. "[T]he party seeking removal has the burden to establish federal subject matter jurisdiction, [and] all doubts about federal jurisdiction must be resolved in favor of remand." Cent. Iowa Power Coop. v. Midwest Indep. Transmission Sys. Operator, Inc., 561 F.3d 904, 912 (8th Cir. 2009) (citations omitted). In sum, the ICCTA may completely preempt certain claims, but the Rail Group has not established that the Griffioen Group's claims fall within the scope of those so preempted.

Our holding is, of course, limited to the issue of federal-question jurisdiction, and so we offer no views regarding any preemption defense that may be raised in state court.

-14-

The order and judgment of the district court are vacated, and the case is remanded with instructions to remand the action to state court.

_____